**Mike CLINE and Brenda Cline,
Appellants (Plaintiffs),**

v.

**ROCKY MOUNTAIN, INC., d/b/a Chinook
Log Homes, Appellee (Defendant).**

**Rocky Mountain, Inc., d/b/a Chinook Log
Homes, Appellant (Defendant),**

v.

**Mike Cline and Brenda Cline,
Appellees (Plaintiffs).**

Nos. 99–38, 99–39.

Supreme Court of Wyoming.

March 6, 2000.

Representing Mike Cline and Brenda Cline: Andrea L. Richard of Rothgerber Johnson & Lyons LLP, Cheyenne, Wyoming.

Representing Rocky Mountain, Inc.: Stephen L. Simonton of Simonton & Simonton, Cody, Wyoming.

Before LEHMAN, C.J.; MACY, GOLDEN & HILL, JJ.; and JERE RYCKMAN, D.J.

MACY, Justice.

In Case No. 99–38, Mike Cline (Mike) and Brenda Cline (Brenda) appeal from the district court's order granting, in part, Rocky Mountain, Inc. d/b/a Chinook Log Homes' (Chinook) request for reimbursement of its attorneys' fees and costs. In Case No. 99–39, Chinook appeals from the portion of the district court's order which denied it part of its attorneys' fees and costs and from the order denying its motion for a new trial.

We affirm the district court's decisions in both cases.

## ISSUES

The Clines phrase the issues in Case No. 99–38 as follows:

I. Did the District Court Err in Awarding Attorney's Fees to Chinook Without Any Legal Basis?

II. Even If the District Court Had Legal Authority to Award Attorney's Fees, Did it Err in Awarding Improper and Unreasonable Fees?

In Case No. 99–39, Chinook frames the issues on appeal as follows:

I. Does Wyoming law enforce contractual "fee shifting" provisions as written?

II. Alternatively, does Wyoming recognize the generally accepted rule that attorneys fees need not be apportioned between claims arising from a common core of facts or related legal theories?

## FACTS

In 1992, the Clines decided to build a commercial log building in Cody to house a gift shop. They purchased drawings from a drafting company which depicted a proposed floor plan for the building. The parties refer to these drawings as the "Lankford drawings."

Subcontractors, who were not involved in this case, performed the excavation work and erected the foundation for the log building. The foundation actually constructed was significantly different from the foundation depicted in the Lankford drawings. Chinook erected a log shell over the foundation pursuant to a contract executed by it and Mike in March 1993. A second contract, which was dated November 17, 1993, called for Chinook to complete the building. In February 1994, Chinook finished the work that was contemplated by the second contract. Mike and Chinook entered into a third contract, dated February 20, 1994, under which Chinook constructed two lofts inside the building.

On February 20, 1996, Mike filed a lawsuit against Chinook and its chief officer, J. Nichols Patrick, claiming, in relevant part, that the November 1993 contract incorporated the Lankford drawings and Chinook had not constructed the log building in accordance with those drawings. Chinook and Patrick employed the same law firm to represent them in the case. Brenda was subsequently joined as a party plaintiff in the case. The district court granted a summary judgment in favor of Patrick on September 10, 1997. The court subsequently granted a summary judgment in favor of Chinook on the grounds that the Clines could not prove they had suffered damages.

Chinook maintained that it was entitled to reimbursement from the Clines for its attorneys' fees and litigation expenses under the November 1993 contract's fee-shifting provision and requested that the district court award it over $93,000 in attorneys' fees and more than $14,000 in costs. The district court determined that, under the contract, Chinook was entitled to be awarded its attorneys' fees but Patrick was not entitled to be reimbursed for his attorneys' fees. The district court also found that Chinook could not be reimbursed for any fees it incurred prior to Patrick's dismissal from the lawsuit on September 10, 1997, because the attorneys had not separated the fees attributable to Patrick's defense from the fees attributable to Chinook's defense. The district court, therefore, awarded Chinook $62,535.13 to reimburse it for the attorneys' fees and costs it expended in defending the lawsuit after Patrick was dismissed.

The Clines appealed to the Wyoming Supreme Court. Chinook filed a cross-appeal after the district court denied its motion for a new trial on the portion of the court's order which denied it reimbursement for the attorneys' fees and costs it incurred prior to September 10, 1997.

## DISCUSSION

### CASE NO. 99–38

The Clines maintain, in their first issue, that the district court erred when it awarded Chinook attorneys' fees and costs pursuant to the November 1993 contract. Chinook argues that the district court correctly determined that the contract entitled it to receive the award. We agree with Chinook.

■ Wyoming subscribes to the American rule regarding recovery of attorneys' fees. *Board of County Commissioners of County of Platte v. State ex rel. Yeadon,* 971 P.2d 129, 132 (Wyo.1998). Under the American rule, each party is generally responsible for his own attorneys' fees. 971 P.2d at 132–33. A prevailing party may, however, be reimbursed for his attorneys' fees when express statutory or contractual authorization exists for such an award. *Id.*

The district court determined that the November 1993 contract allowed for the award of attorneys' fees in this case. Paragraph 17 of the contract stated in pertinent part: "Except as otherwise provided in this agreement, in the event of any dispute concerning this agreement, the prevailing party shall be entitled to all reasonable costs and expenses incurred to settle the matter, including reasonable attorney's fees." The Clines insist that, because the district court repeatedly stated that the November 1993 contract did not apply to the dispute, it erred when it ruled that the fee-shifting provision set out in Paragraph 17 required the Clines to reimburse Chinook for its attorneys' fees and costs. We do not agree with the Clines' reading of the record or their interpretation of the contractual language.

■ This Court's role in interpreting contractual fee-shifting provisions is to discern the intent of the contracting parties. *See DeWitt v. Balben,* 718 P.2d 854, 863 (Wyo.1986). We utilize our traditional rules of contract interpretation to accomplish that result. *Id.* In discerning the meaning of a contract, our initial inquiry focuses on whether the language of the contract is clear or ambiguous. *See Treemont, Inc. v. Hawley,* 886 P.2d 589, 592 (Wyo.1994). "Courts make that determination as a matter of law." *Wolter v. Equitable Resources Energy Company, Western Region,* 979 P.2d 948, 951 (Wyo. 1999); *see also Svalina v. Split Rock Land and Cattle Company,* 816 P.2d 878, 881 (Wyo.1991). This Court looks at the plain

meaning of the words expressed within the four corners of a clear and unambiguous contract to determine the parties' intent. *Wolter,* 979 P.2d at 951. Of course, we are always cognizant of the necessity of giving a reasonable construction to the contract language. *Fremont Homes, Inc. v. Elmer,* 974 P.2d 952, 956 (Wyo.1999).

■ The claims set out in the Clines' complaint against Chinook were based upon the November 1993 contract. Paragraph 17 allowed fee shifting for "any dispute concerning this agreement." The fee-shifting language was clear and unambiguous. The plain language of Paragraph 17 obligated the losing party in any dispute concerning the agreement to pay the attorneys' fees of the prevailing party.

The district court stated that the November 1993 contract was obviously intended to reduce a prior oral or implied agreement between the parties to writing because Chinook had performed significant work on the building before the contract was actually executed. Contrary to the Clines' assertion, the district court did not state that the November 1993 contract did not apply to the parties' dispute. Instead, it stated that the Clines could not prove their claims because they did not designate a witness who could testify as to their damages. Regardless of the fact that the district court found the Clines could not prevail on their claims under the contract, they were still obligated to pay Chinook's attorneys' fees pursuant to the plain language of Paragraph 17. The district court did not err by awarding attorneys' fees to Chinook under the November 1993 contract.

In their second issue, the Clines maintain that the district court abused its discretion when it awarded Chinook more than $62,000 in attorneys' fees and costs. Before we address the issue of the propriety of the amount of the attorneys' fees award, we must address two collateral matters.

The attorneys' fees award in this case included a substantial amount for paralegal expenses. This Court has never directly addressed the issue of whether or not paralegal expenses are properly included within an award of attorneys' fees. The parties did not discuss this issue in their briefs, apparently assuming that paralegal expenses may be included in an attorneys' fees award. We believe, however, that the issue should be discussed in this decision because it is a matter of first impression in this jurisdiction.

Our research has revealed a split of authority as to whether or not paralegal expenses should be included in an attorneys' fees award. For example, the Florida courts do not include paralegal expenses in attorneys' fees awards because they believe that such awards should include only fees for work actually performed by attorneys. *See, e.g., ABD Management Corporation v. Robert L. Turchin, Inc.,* 490 So.2d 202 (Fla.Dist. Ct.App.1986) (per curiam); *Bill Rivers Trailers, Inc. v. Miller,* 489 So.2d 1139 (Fla.Dist. Ct.App.1986). Other states do allow paralegal fees to be included in attorneys' fees awards. *See, e.g., Salton Bay Marina, Inc. v. Imperial Irrigation District,* 172 Cal. App.3d 914, 218 Cal.Rptr. 839 (1985); *Continental Townhouses East Unit One Association v. Brockbank,* 152 Ariz. 537, 733 P.2d 1120 (Ct.App.1986); *First NH Banks Granite State v. Scarborough,* 615 A.2d 248 (Me. 1992). The rationale for allowing paralegal expenses is to mitigate the costs associated with litigation and to improve the efficiency of the attorneys. *Continental Townhouses East Unit One Association,* 733 P.2d at 1127. The Maine Supreme Judicial Court stated that it would not adopt a "talismanic formula with regard to the inclusion of paralegal fees" in attorneys' fees awards. *First NH Banks Granite State,* 615 A.2d at 251. That court held that it would review each case to determine whether the trial court abused its discretion by ascertaining whether the fees awarded for all legal services were fair and reasonable. *Id.*

■ We believe that the Arizona and Maine courts have articulated the correct way to resolve the issue. By allowing reasonable paralegal expenses to be included in attorneys' fees awards in appropriate cases, we encourage efficient and cost-effective legal services and give the trial courts greater discretion in fashioning reasonable awards. We will, therefore, review the reasonableness

of attorneys' fees awards, including amounts allowed for paralegal expenses, on a case-by-case basis.

Another issue raised by the Clines is whether or not it was proper for the district court to include, in an attorneys' fees award, expenses paid for paralegal services provided by an unlicensed attorney. Chinook's law firm employed an unlicensed attorney to act as a paralegal in this case. The Clines maintain that the employment relationship between the unlicensed attorney and Chinook's law firm violated Rule 8.4(g) of Wyoming's Rules of Professional Conduct for Attorneys at Law [1] because the unlicensed attorney resigned from the California State Bar while client complaints were pending against him. Apparently, this matter was brought to the attention of the Wyoming State Bar Counsel, and he stated that Rule 8.4(g) pertains to disbarred and suspended attorneys but does not apply to attorneys who have resigned from the practice of law. The issue concerning the correct interpretation of the disciplinary rule is not before this Court. *See Scott v. McTiernan*, 974 P.2d 966, 974 n. 5 (Wyo. 1999). We will, therefore, leave this matter to the Wyoming State Bar until such time as it is properly presented to this Court.

 We turn now to our analysis of the reasonableness of the attorneys' fees award.

We review an award of attorney's fees under an abuse of discretion standard. A court abuses its discretion only when it acts in a manner which exceeds the bounds of reason under the circumstances. The burden is placed upon the party who is attacking the trial court's ruling to establish an abuse of discretion, and the ultimate issue is whether the court could reasonably conclude as it did.

*Johnston v. Stephenson*, 938 P.2d 861, 862 (Wyo.1997) (citations omitted). Wyoming employs the federal lodestar test to determine whether an attorneys' fees award was reasonable. *Id.; see also* Wyo. Stat. Ann. § 1–14–126(b) (LEXIS 1999). The two factors which are examined under the lodestar test are: "(1) whether the fee charged represents the product of reasonable hours times a reasonable rate; and (2) whether other factors of discretionary application should be considered to adjust the fee either upward or downward." *Johnston*, 938 P.2d at 862–63.

 At first blush, an award of more than $62,000 for attorneys' fees and costs does seem somewhat excessive for a matter that ended in a summary judgment. The record reflects, however, that a substantial amount of legal work was performed before the matter was finally resolved by a summary judgment which was granted just two days before the trial was scheduled to begin. Chinook presented the district court with extensive documentation supporting its request for attorneys' fees and costs, including: (1) detailed itemized billing statements; (2) explanatory affidavits from Stephen Simonton, the supervising attorney; and (3) an affidavit from C. Edward Webster II, a Cody attorney and municipal court judge, who stated that the amount was reasonable in light of the complexity of the case and the adversarial nature of the parties.

The district court was in the best position to review the details of Chinook's fee application. The considerable court file and the documentation Chinook filed in support of its request for attorneys' fees and costs constituted ample evidence to support the district court's decision. The district court did not abuse its discretion when it fashioned the

---

**1.** Rule 8.4(g) of the Rules of Professional Conduct for Attorneys at Law states:

It is professional misconduct for a lawyer to:
. . .
(g) knowingly employ or continue to employ or contract with any person in the practice of law who has been disbarred or is under suspension from the practice of law by any jurisdiction. The prohibition of this rule extends to the employment of or contracting for the services of such disbarred or suspended person in

any position or capacity (including but not limited to as an employee, independent contractor, paralegal, secretary, investigator or consultant) which is directly or indirectly related to the practice of law as defined by Rule 11(a) of the Rules of the Supreme Court of Wyoming Providing for the Organization and Government of the Bar Association and Attorneys at Law of the State of Wyoming, whether or not compensation is paid.

attorneys' fees award in this case.[2]

## CASE No. 99–39

■ In Case No. 99–39, Chinook alleges that the district court erred when it refused to reimburse it for the attorneys' fees and costs it incurred prior to Patrick's dismissal from the lawsuit on September 10, 1997. Chinook maintains in its first issue that the language of Paragraph 17 was sufficiently broad to allow the district court to award Chinook all of its legal expenses, including those the corporation paid on behalf of Patrick. The Clines argue that the contractual language cannot be extended to cover the expenses of Patrick's defense. We agree with the Clines.

We will apply the traditional rules for interpreting contracts that we recited earlier in this decision to resolve this issue. By its very nature, the November 1993 contract applied to only the contracting parties: Chinook and Mike. Patrick was not a party to the contract, and the contract language did not specifically provide for payment of Patrick's attorneys' fees. This Court has stated: " 'In order to recover attorney's fees under a contract, the agreement must unequivocally provide for such recovery.' " *Cowardin v. Finnerty,* 994 P.2d 335, 338 (Wyo.1999) (quoting *Coulter v. City of Rawlins,* 662 P.2d 888, 904 (Wyo.1983)). Chinook's broad interpretation of the contract language unreasonably expands the coverage of the fee-shifting provision beyond what its plain language suggests the parties intended when they executed the contract. The district court properly determined that the contract did not obligate the Clines to reimburse Chinook for Patrick's legal expenses.

■ In its second issue, Chinook contends that the Clines should be required to pay for the legal expenses it amassed prior to Patrick's dismissal from the case on September 10, 1997, because its attorneys were working on claims which were asserted against both defendants and involved a common core of facts and/or related legal theories. The Clines argue that the district court

correctly determined that Chinook could not recover those fees because its attorneys did not segregate the fees attributable to Patrick's defense from the fees attributable to its defense. We agree with the Clines.

This Court has repeatedly held that segregation of fees between multiple clients and/or multiple claims is required when it is possible. *See, e.g., Rocky Mountain Helicopters, Inc. v. Air Freight, Inc.,* 773 P.2d 911, 925 (Wyo.1989); *Miles v. CEC Homes, Inc.,* 753 P.2d 1021, 1027 (Wyo.1988). Chinook points out that other jurisdictions have recognized an exception to the duty to segregate fees which operates when the attorneys generated fees by working on claims which arose out of the same transaction and were so interrelated that their prosecution or defense necessarily involved proof or refutation of essentially the same facts. *See, e.g., San Dieguito Partnership, L.P. v. San Dieguito River Valley Regional Open Space Park Joint Powers Authority,* 61 Cal.App.4th 910, 72 Cal. Rptr.2d 91, 96 (1998); *Duchscherer v. W.W. Wallwork, Inc.,* 534 N.W.2d 13, 17–18 (N.D. 1995); *DeSpiegelaere v. Killion,* 24 Kan. App.2d 542, 947 P.2d 1039 (1997).

The case at bar is not a proper case for this Court to decide whether or not Wyoming will adopt the rule that attorneys' fees do not need to be segregated between multiple parties or claims when the claims are sufficiently interrelated. Chinook has not convinced us that it was impossible for the attorneys to segregate their fees between the two clients. In light of the fact that Chinook did not clearly establish that the attorneys could not separate the fees attributable to it from the fees attributable to Patrick, we are reluctant to diverge from the general rule that each party must pay its own fees. The district court properly determined that Chinook was not entitled to be reimbursed for the fees generated by its attorneys prior to Patrick's dismissal from the lawsuit because the attorneys did not segregate the fees between defendants.

---

2. The Clines also make numerous alternative arguments in support of their claim that the district court's ruling was in error. Those arguments do not have merit and will not be addressed individually in this decision.

## A. Attorneys' Fees on Appeal

 Chinook argues that the attorneys' fees provision of the contract entitles it to recover its attorneys' fees and litigation costs on appeal. In *Ahearn v. Tri–County Federal Savings Bank*, 954 P.2d 1371, 1373 (Wyo. 1998) (quoting *Shoup v. Mayerson*, 454 P.2d 666, 670 (Okla.1969)), this Court adopted the general rule that " '[a] contract for a reasonable attorney's fee in enforcing its provisions embraces an allowance for legal services rendered upon appeal as well as during the trial.' " *See also DeWitt*, 718 P.2d at 864–66. The fee-shifting language in the November 1993 contract was broad, and, consequently, we read it as granting the prevailing party the right to be reimbursed for the attorneys' fees it paid to prosecute and/or defend on appeal.

 Chinook is, therefore, entitled to be awarded its attorneys' fees and costs on appeal in Case No. 99–38 because it is the prevailing party in that case. Chinook is not, however, entitled to be reimbursed for the litigation expenses that were generated in prosecuting its cross-appeal in Case No. 99–39 because it is not the prevailing party in that case.[3] Generally, the appellate court, rather than the trial court, determines the proper amount of fees to be awarded for the legal work on appeal. *Ahearn*, 954 P.2d at 1373; *DeWitt*, 718 P.2d at 866. We will, therefore, calculate Chinook's attorneys' fees award after it presents proper documentation to us.

Affirmed.

---

[3]. The Clines did not request that we order Chinook to reimburse them for the attorneys' fees and costs they paid to defend against Chinook's appeal in Case No. 99–39.