2011 WY 102

Barbara L. MAGIN, as a trustee of the Barbara L. Magin trust u/t/a dated June 30, 1995, Appellant (Defendant),

v.

SOLITUDE HOMEOWNER'S INC., a Wyoming non-profit corporation, Appellee (Plaintiff).

Barbara L. Magin, as a trustee of the Barbara L. Magin trust u/t/a dated June 30, 1995, Appellant (Defendant),

v.

Solitude Homeowner's, Inc., a Wyoming non-profit corporation, Appellee (Plaintiff).

Nos. S–10–0166, S–10–0177.

Supreme Court of Wyoming.

June 30, 2011.

Representing Appellant in Case No. S–10–0166: Gerard R. Bosch and Mark J. Longfield of Law Offices of Jerry Bosch, LLC, Wilson, Wyoming. Argument by Mr. Bosch.

Representing Appellee in Case No. S–10–0166: Glenn M. Ford of Garland Ford & Potter, LLC, Jackson, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1] The district court granted Solitude Homeowners, Inc. (Solitude) summary judgment on its claims that Barbara L. Magin had violated the subdivision's protective covenants by erecting screens, brush, log piles, and fencing. The district court also awarded Solitude attorney fees.

[¶ 2] On appeal, Ms. Magin challenges the district court's refusal to disqualify Solitude's counsel for having a conflict of interest and its refusal to allow her additional time to respond to Solitude's summary judgment motion. She also claims the district court erred by granting summary judgment to Solitude on the covenant violations and awarding Solitude attorney fees.

[¶ 3] We conclude that Solitude's counsel had a conflict of interest; however, the district court did not err by refusing to disqualify the firm because Ms. Magin's motion to disqualify was untimely. The district court also did not abuse its discretion by refusing to allow Ms. Magin additional time to respond to Solitude's summary judgment motion and properly granted summary judgment in favor of Solitude and ordered Ms. Magin to bring her property into compliance with the covenants. We conclude, however, that the district court abused its discretion by ordering Ms. Magin to pay the attorney fees generated by her former firm because it

failed to segregate the non-recoverable fees associated with clearing the conflict.

[¶4] We, therefore, affirm in part and reverse in part.

## ISSUES

[¶5] Ms. Magin presents several issues, which we re-phrase:

1. Did the district court abuse its discretion when it denied Ms. Magin's Motion to Disqualify Solitude's attorney under Rule 1.9 of the Wyoming Rules of Professional Conduct for Attorneys at Law and for a hearing on the matter?

2. Did the district court abuse its discretion by denying Ms. Magin's motion to continue the summary judgment hearing and/or motion for extension of time to respond to Solitude's motion for summary judgment?

3. Did the district court err by granting summary judgment in favor of Solitude on the basis that Ms. Magin had violated the covenants?

4. Did the district court abuse its discretion by awarding Solitude attorney fees?

## FACTS

[¶6] In 1997, Ms. Magin purchased Lot 34 in the Solitude subdivision in Teton County, Wyoming. Shortly after she purchased the property, the Solitude Site Committee informed her that pre-existing fences and a "bully" barn were in violation of the subdivision covenants. She retained attorney Joseph Moore, and he contacted the individual from whom Ms. Magin had purchased the property seeking compensation or assistance with bringing the property into compliance with the covenants. Mr. Moore also negotiated with the Solitude Site Committee to avoid litigation over the covenant violations. Ms. Magin objected to Mr. Moore's bill and a proceeding before the Wyoming State Bar Committee for Resolution of Fee Disputes was commenced. Mr. Moore apparently withdrew his bill before the committee issued a decision.

[¶7] On February 4, 2008, Solitude filed a complaint against Ms. Magin alleging different violations of the covenants and seeking to recover the attorney fees it incurred in enforcing the covenants. Solitude's original law firm withdrew and on September 5, 2008, attorney Glenn Ford entered an appearance on Solitude's behalf. Mr. Ford practiced in the same firm as Ms. Magin's original attorney, Mr. Moore. Mr. Moore claimed that he contacted Ms. Magin's current attorney, Gerard Bosch, prior to Mr. Ford agreeing to represent Solitude and he and Mr. Bosch agreed there was no conflict of interest. Mr. Bosch acknowledged they had talked, but stated that Ms. Magin verbally agreed to waive the conflict provided Mr. Moore did not participate in the litigation. No written waiver of conflict was executed as required by Wyoming Rule of Professional Conduct for Attorneys at Law 1.9.

[¶8] Over a year later, on September 29, 2009, Mr. Moore attended a hearing on pending motions with Mr. Ford. On October 9, 2009, Ms. Magin filed a motion to disqualify Mr. Ford from acting as Solitude's counsel because he had a conflict of interest. Ms. Magin submitted various materials and asked for another judge or magistrate to review them *in camera* because they were privileged and she was apparently concerned that the presiding judge's consideration of the underlying covenant violation issue may be tainted by the materials. On November 19, 2009, the district court denied the motion to disqualify and the motion for *in camera* review without holding a hearing and without offering an explanation for its rulings. Ms. Magin filed a motion for reconsideration the following day. On December 18, 2009, the matter was assigned to another district court judge as a result of the retirement of the first judge. On February 22, 2010, the newly appointed judge set all pending matters for a hearing on April 1, 2010.

[¶9] At that hearing, the district court denied Ms. Magin's motion for reconsideration of the denial of her request for disqualification, again without holding an evidentiary hearing but indicating he presumed that the previous judge had reviewed the *in camera* materials. The court also denied Ms. Magin's motion to continue the summary judgment hearing and her request for additional time to respond to the summary judgment

motion and considered the case on the merits. The district court granted summary judgment in favor of Solitude, concluding that Ms. Magin had violated the covenants and Solitude was entitled to attorney fees. Solitude filed its motion for attorney fees, and the district court awarded all of the fees sought by Solitude. Ms. Magin appealed from the order denying her motion for disqualification, the order granting summary judgment in favor of Solitude and the order granting Solitude attorney fees.

## DISCUSSION

### A. Disqualification/Conflict of Interest

■ [¶ 10] A district court's ruling on a motion to disqualify for a conflict of interest is reviewed for abuse of discretion. *Carlson v. Langdon,* 751 P.2d 344, 350 (Wyo.1988). Ms. Magin's motion was based upon Rule 1.9(a):

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client makes an informed decision to waive the conflict, confirmed in writing signed by the client.

Although Mr. Ford did not formerly represent Ms. Magin, another member of his firm, Mr. Moore, did. Rule of Professional Conduct for Attorneys at Law 1.10(a) imputes a conflict of interest to all members of a law firm:

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

Thus, Mr. Ford was disqualified from representing Solitude to the same extent as Mr. Moore.

■ [¶ 11] In *Simpson Performance Prods., Inc., v. Robert W. Horn, P.C.,* 2004 WY 69, ¶ 16, 92 P.3d 283, 287 (Wyo.2004), we identified four elements which must be proven to establish a Rule 1.9 violation:

First, there must have been a valid attorney-client relationship between the attorney and the former client.... Second, the interests of the present and former clients must be materially adverse.... Third, the former client must not have consented, in an informed manner, to the new representation.... Finally, the current matter and the former matter must be the same or substantially related.

*Sullivan County Regional Refuse Disposal Dist. v. Town of Acworth,* 141 N.H. 479, 686 A.2d 755, 757 (1996).

■ [¶ 12] Solitude concedes that all of the elements of the test are met in this case, with the exception of the last element. It contends that the current matter is not the same as or substantially related to the former matter. Comment 3 to Rule 1.9 discusses the definition of "substantially related":

[3] Matters are "substantially related" for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter.... [For example,] a lawyer who has previously represented a client in securing environmental permits to build a shopping center would be precluded from representing neighbors seeking to oppose rezoning of the property on the basis of environmental considerations; however, the lawyer would not be precluded, on the grounds of substantial relationship, from defending a tenant of the completed shopping center in resisting eviction for nonpayment of rent.... Information acquired in a prior representation may have been rendered obsolete by the passage of time, a circumstance that may be relevant in determining whether two representations are substantially related.... A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that

the lawyer has confidential information to use in the subsequent matter. A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services.

[¶ 13] As the comment makes clear, the determination of whether the current and former matters are substantially related is inherently factual. In light of the factual nature of the issue, the Tenth Circuit Court of Appeals has stated the following with regard to the necessity of an evidentiary hearing:

> If the moving party makes a non-frivolous allegation that he has had an attorney-client relationship in a substantially related matter, a district court must investigate the allegation further through an evidentiary hearing before denying a motion to disqualify. Failure to do so constitutes an abuse of discretion.

*United States v. LaVallee*, 439 F.3d 670, 681–82 (10th Cir.2006), citing *United States v. Stiger*, 413 F.3d 1185, 1196 (10th Cir.2005). *See also, Simpson*, ¶ 20, 92 P.3d at 288 (indicating that the determination of whether a conflict of interest exists requires a "fact-intensive analysis").

[¶ 14] Solitude argued that the present matter was not substantially related to Mr. Moore's prior representation of Ms. Magin. It insisted that Mr. Moore's representation of Ms. Magin involved a dispute with the seller of the property over covenant violations and was resolved years ago, while the current matter involves different violations of the covenants and was brought by the home-owners' association. All of that is true. However, the materials submitted by Ms. Magin establish that the genesis of the first dispute was a claim by Solitude and her neighbors that certain structures and fences constructed on her property by her predecessor violated the covenants.[1] Ms. Magin's submissions showed that Mr. Moore advised her with regard to interpretation of some of the same covenants at issue here and negotiated with Solitude with regard to the covenant violations.

[¶ 15] Ms. Magin certainly presented a non-frivolous allegation that the matters were substantially related. As such, the district court was obligated to conduct an evidentiary hearing. The court's failure to do so amounted to an abuse of discretion. *See LaVallee*, 439 F.3d at 681–82. Although we would normally remand to the district court to hold an evidentiary hearing on the issue of whether the current and former matters were substantially related, the record contains sufficient information for us to make a determination. In any event, a remand is unnecessary because, as explained *infra*, the motion to disqualify was untimely.

[¶ 16] The interest served by Rule 1.9 is the protection of the confidentiality of the client's information. "[P]reservation of a client's confidences has been described as the 'bedrock principle of the Anglo–American legal system.'" *Bevan v. Fix*, 2002 WY 43, ¶ 50, 42 P.3d 1013, 1028 (Wyo.2002), quoting Mallen and Smith, *Legal Malpractice*, Adverse Representation § 17.3 Ethical Considerations (5th ed. 2000), which quoted *In re Complex Asbestos Litigation*, 232 Cal.App.3d 572, 283 Cal.Rptr. 732 (1991). In *Carlson*, 751 P.2d at 348, we stated that "the communication of confidential information is presumed once a showing is made that the matter in which an attorney formerly provided representation is substantially related to matters in the pending action." We adopted a broad test for determining whether a substantial relationship exists between the two matters. "If the two matters have common facts, the attorney is in a position to receive confidential information which possibly could be used to the detriment of the former client in the later proceeding." *Id.* at 349 (citation omitted).

---

1. We have reviewed the materials submitted *in camera* by Ms. Magin. In an effort to preserve the confidentiality of the information contained in those materials, we are limiting our discussion to matters which were also disclosed in Ms. Magin's district court pleadings and/or appellate brief. We note, however, that the *in camera* materials contain additional evidence and reinforce our conclusion that the matters were substantially related.

[¶ 17]  *Carlson* is an example of where disqualification was required.  There, Carl Carlson and his mother retained attorney A.B. to draft a lease agreement which apparently gave Mr. Carlson the option to purchase property belonging to his mother after her death in return for his leasing the property and making improvements upon it.  *Id.* at 345–46.  Citizens National Bank & Trust Co. had loaned Ms. Carlson money and urged her to sell the property to pay off the loan.  She advised Mr. Carlson she was terminating the lease and selling the property, and Mr. Carlson retained another attorney, E.F., to file suit against Ms. Carlson and the bank, alleging conspiracy to interfere with the contractual relationship between the Carlsons and intentional infliction of emotional distress.  *Id.* at 346.  A.B. appeared and answered on behalf of Citizens.  *Id.*  On appeal, this Court held that the district court abused its discretion by denying Mr. Carlson's motion to disqualify A.B. from acting as Citizens' attorney.  We ruled that A.B.'s prior representation of Mr. Carlson and later representation of Citizens were substantially related because they both concerned the "existence, content and effect" of the lease agreement between Mr. Carlson and his mother.  *Id.* at 349–50.

[¶ 18]  Solitude attempts to distinguish *Carlson* from the present case by stating that Mr. Moore did not draft the agreement at issue, i.e. the covenants, and the earlier dispute was between Ms. Magin and the seller.  As we stated above, the documents submitted by Ms. Magin showed that, while the earlier dispute involved the seller, it started with assertions by Solitude and Ms. Magin's neighbors that her property was in violation of the covenants.

[¶ 19]  The present proceeding involves conditions which Ms. Magin herself created several years after the first matter was resolved.  Nevertheless, the interpretation and application of the covenants were directly at issue in both proceedings.  Mr. Moore provided advice to Ms. Magin about the covenants which went beyond the violations alleged at that time including specific advice on how to vote on proposed amendments to the covenants, some of which are directly at issue

in this case.  The circumstances here are similar to the example provided in Rule 1.9, Comment 3, where an attorney who represented "a client in securing environmental permits to build a shopping center would be precluded from representing neighbors seeking to oppose rezoning of the property on the basis of environmental considerations."  Despite the passage of time between the two proceedings, they involved common facts including the interpretation and application of the covenants.  The matters were, therefore, substantially related and Mr. Moore, Mr. Ford and their firm were prohibited, under Rule 1.9, from representing Solitude against Ms. Magin.

[¶ 20]  Our inquiry does not, however, end with the conclusion that a conflict of interest existed.  Solitude argues that Ms. Magin surrendered her right to disqualify Mr. Ford because she did not file a motion to disqualify within a reasonable time after she discovered the conflict.  The district court did not state its reasons for denying Ms. Magin's motion to disqualify; thus, it may have determined that the motion was untimely.  In any event, we can affirm a district court's ruling on any basis appearing in the record.  *See, e.g., Walker v. Karpan,* 726 P.2d 82, 89 (Wyo.1986).

[¶ 21]  If the client does not file a motion to disqualify within a reasonable time, she is deemed to have waived her objection to the conflict.  *Trust Corp. of Montana v. Piper Aircraft Corp.,* 701 F.2d 85, 87–88 (9th Cir.1983).  *See also, Central Milk Producers Coop. v. Sentry Food Stores, Inc.,* 573 F.2d 988, 992 (8th Cir.1978); *Redd v. Shell Oil Co.,* 518 F.2d 311, 315 (10th Cir.1975); J. Burman, *Conflicts of Interest in Wyoming,* 35 Land & Water L.Rev. 79, 100 (2000).  Because of the potential for use of a late motion to disqualify as a technique of harassment, courts particularly frown upon clients waiting until significant work has been performed in a case to request disqualification.  *See id.*

[¶ 22]  Mr. Ford entered his appearance on September 5, 2008; Ms. Magin did not file her motion to disqualify until over a year later, on October 9, 2009.  Ms. Magin's attorney, Mr. Bosch, explained the delay by stat-

ing that when Mr. Moore contacted him before Mr. Ford entered his appearance and asked for a waiver of conflict, Ms. Magin verbally agreed to waive the conflict provided Mr. Moore did not participate in the current matter. Shortly after Mr. Moore attended the September 29, 2009, hearing allegedly in violation of the verbal agreement, Ms. Magin filed her motion to disqualify.

[¶ 23] Mr. Moore offered a different explanation. He filed an affidavit in which he stated that he had not sought a waiver of conflict because no conflict existed. Arguing on appeal that Ms. Magin's motion was untimely, Mr. Ford asserts that because her attorney initially consented to Mr. Ford's representation of Solitude,[2] she should not be allowed to seek disqualification at this late date.

[¶ 24] As we concluded above, a conflict did exist and Mr. Ford and Mr. Moore were obligated to obtain a waiver from Ms. Magin. Rule 1.9(a) does not allow verbal waivers of conflicts and specifically requires that "the former client make[ ] an informed decision to waive the conflict, confirmed in writing signed by the client." *See, e.g., Boldridge v. State*, 289 Kan. 618, 215 P.3d 585, 593 (2009) (indicating that unless there are special circumstances, such as a waiver made on the record after informed consent, a verbal waiver will not satisfy the written waiver requirement). An obvious purpose of the rule requiring a written waiver is to have the parameters of the parties' waiver agreement formalized to prevent precisely this type of dispute from arising later. Therefore, Ms. Magin's verbal waiver was not effective under Rule 1.9(a) to waive the conflict of interest.

[¶ 25] Ms. Magin was aware of Mr. Ford's conflict of interest when he entered his appearance on behalf of Solitude and she did not effectively waive the conflict. Consequently, she had an obligation to demand Mr. Ford's disqualification in a timely manner. She did not file her motion for disqualification until over a year after Mr. Ford began representing Solitude. During that time, the

parties performed significant work on the case, including conducting discovery, locating expert witnesses and filing dispositive motions. An order by the district court requiring Mr. Ford to withdraw at that late date would have wasted judicial resources and prejudiced Solitude by requiring it to find new counsel costing additional time and money and unnecessarily delaying resolution of the matter. *See, e.g., Central Milk*, 573 F.2d at 992 (holding "[a] motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion"); *Redd*, 518 F.2d at 315 (holding motion to disqualify should be filed as soon as conflict becomes known to "avoid the very kind of disorder which resulted" from the delay); *Trust Corp. of Montana*, 701 F.2d at 87 ("It is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right."). We conclude, therefore, that Ms. Magin surrendered her right to request the disqualification of Mr. Ford because she delayed in filing her motion and the district court did not abuse its discretion by denying the motion or refusing to reconsider its denial.

### B. Continuance/Discovery—Summary Judgment

[¶ 26] In two related issues, Ms. Magin challenges the district court's refusal to grant her motion to continue the summary judgment hearing and her motion for additional time to conduct discovery. The district court has broad discretion to grant or deny a motion for continuance and absent a manifest abuse of discretion, the reviewing court will not disturb its ruling. *Abraham v. Great Western Energy, LLC*, 2004 WY 145, ¶ 16, 101 P.3d 446, 454 (Wyo.2004).

> To find an abuse of discretion, the refusal must be so arbitrary as to deny appellant due process, and the burden rests upon appellant to prove actual prejudice and a violation of his rights. Upon review we

---

**2.** This statement contradicts, to some extent, Mr. Moore's averment that he had not asked for a

waiver because no conflict of interest existed.

look at the peculiar circumstances of the case and the reasons presented to the trial judge at the time of the request. *Byrd v. Mahaffey,* 2003 WY 137, ¶ 7, 78 P.3d 671, ¶ 7 (Wyo.2003).

*Id. See also, Jacobson v. Cobbs,* 2007 WY 99, ¶ 10, 160 P.3d 654, 657 (Wyo.2007).

[¶ 27] Solitude filed its motion for summary judgment in August 2009. Ms. Magin filed motions for extension of time to respond to the summary judgment motion in August and September 2009, citing Solitude's failure to comply with her discovery requests. At the hearing on September 29, 2009, the district court ordered Solitude to produce the documents requested by Ms. Magin and make its board members and experts available for depositions. Solitude produced documents to Ms. Magin in October 2009.

[¶ 28] The record contains no evidence that Ms. Magin made any effort to depose the Solitude board members and experts following the district court's ruling that she was entitled to do so. If she did and was refused by Solitude, Ms. Magin filed no motion to compel. Additionally, after Solitude produced the documents in October 2009, the record contains no evidence that Ms. Magin requested additional information or used the documents produced to prepare a response to Solitude's motion for summary judgment.

[¶ 29] On February 22, 2010, the district court *sua sponte* set a hearing on all pending motions for April 1, 2010. Ms Magin still took no action to prepare a response to the summary judgment motion and on March 26, 2010, filed a motion to continue the hearing on Solitude's summary judgment motion. The district court denied the motion to continue on March 30, 2010. On the day of the hearing, Ms. Magin filed a memorandum requesting additional time to respond to Solitude's summary judgment motion under W.R.C.P. 56(f), citing among other reasons, the need to depose several witnesses. The district court denied the request and granted summary judgment on the merits in favor of Solitude.

[¶ 30] Ms. Magin claims the district court should have continued the hearing and allowed her additional time to conduct discovery because it had not ruled on her motion for reconsideration of the disqualification motion and had not established discovery deadlines after ordering Solitude to comply with her discovery requests at the September 29, 2009, hearing. Although a district court has the power to reconsider its pre-judgment rulings, *see, e.g., Steranko v. Dunks,* 2009 WY 9, ¶ 6, 199 P.3d 1096, 1096–97 (Wyo.2009) (order granting petition for writ of review), Ms. Magin provides no authority that a motion for reconsideration of a pre-judgment ruling relieves litigants of their responsibility to respond timely to a summary judgment motion.

[¶ 31] In addition, the fact that a district court has not set deadlines for discovery or filing responses to dispositive motions does not mean the parties can allow a matter to languish. Wyoming Rule of Civil Procedure 6(b) and (c) set forth the time for responding to motions when the district court has not set other deadlines and a means for seeking an order from the district court establishing different deadlines. Rule 6(c)(1) states:

> Unless these rules or an order of the court establish time limitations other than those contained herein, all motions, . . . together with supporting affidavits, if any, shall be served at least 10 days before the hearing on the motion. . . . [U]nless the court by order permits service at some other time, a party affected by the motion may serve a response, together with affidavits, if any, at least three days prior to the hearing on the motion or within 20 days after service of the motion, whichever is earlier. Unless the court by order permits service at some other time, the moving party may serve a reply, if any, at least one day prior to the hearing on the motion or within 15 days after service of the response, whichever is earlier. Unless the court otherwise orders, any party may serve supplemental memoranda or rebuttal affidavits at least one day prior to the hearing on the motion.

*See also, Kruckenberg v. Ding Masters, Inc.,* 2008 WY 40, ¶ 15, 180 P.3d 895, 900 (Wyo. 2008). Ms. Magin's claim that the summary judgment hearing should have been continued because the district court had not set

specific deadlines ignores the requirements of the rules of civil procedure. If Ms. Magin wanted different deadlines set, she should have filed a motion asking for them.[3] In addition, nearly six weeks passed between the February 22, 2010, order setting the summary judgment hearing and the actual hearing on April 1, 2010, during which Ms. Magin could have prepared a response to Solitude's summary judgment motion.

[¶ 32] Ms. Magin also claimed she was entitled to additional time to conduct discovery under W.R.C.P. 56(f):

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

In *Jacobson*, ¶¶ 11–15, 160 P.3d at 657–58, we agreed with the district court that a litigant cannot use Rule 56(f) to excuse his failure to move forward with discovery, etc. and forestall summary judgment when he has had ample time to conduct discovery and respond to a summary judgment motion. Ruling that the district court did not abuse its discretion when it denied Jacobson's motion for enlargement of time to respond to Cobb's summary judgment motion, we distinguished *Abraham*. In that case, we held that the district court abused its discretion by refusing to continue the summary judgment hearing when the discovery deadline had not expired and the defendant had not been given adequate time to respond to the summary judgment motion. *Id.*, ¶ 19, 101 P.3d at 455.

[¶ 33] The present case is more similar to *Jacobson* than to *Abraham*. Ms. Magin did not establish that she had insufficient time to obtain the necessary discovery or that she had a valid reason for being unable to present facts essential to her position. She had over six months from the time the district court granted her discovery requests until the summary judgment hearing was held. Even after the denial of her motion for disqualification, she had four months to prepare. Ms. Magin simply ignored her obligations to move forward with discovery and present a response to Solitude's summary judgment motion.

[¶ 34] In denying Ms. Magin's request for a continuance and granting Solitude's motion for summary judgment, the district court specifically stated that it was relying on the principles set forth in W.R.C.P. 1:

> These rules govern procedure in all courts of record in the State of Wyoming, in all actions, suits or proceedings of a civil nature and in all special statutory proceedings except as provided in Rule 81. **They shall be construed and administered to secure the just, speedy, and inexpensive determination of every action.**

(Emphasis added.) The district court acted well within its discretion and consistent with the letter and spirit of the rules. Considering the extended procedural history in this case, we conclude the district court did not abuse its discretion by denying the motion for a continuance or refusing Ms. Magin additional time to respond to the summary judgment motion under Rule 56(f).

### C. Summary Judgment Rulings

[¶ 35] Summary judgments are governed by W.R.C.P. 56(c), which states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

We review a summary judgment *de novo*, using the same materials and following the same standards as the district court. "We

---

**3.** At the September 29, 2009, hearing the district court generally stated various time periods for discovery in terms of the number of days each party should have to comply and/or respond, without establishing any particular deadlines.

Although the judge directed Mr. Ford to prepare an order, the record does not contain an order memorializing the district court's ruling or setting any deadlines.

examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record." *Hasvold v. Park County School Dist. No. 6,* 2002 WY 65, ¶ 11, 45 P.3d 635, 637–38 (Wyo.2002), quoting *Four Nines Gold, Inc. v. 71 Constr., Inc.,* 809 P.2d 236, 238 (Wyo.1991). *See also, Alpine Lumber Co. v. Capital West Nat'l Bank,* 2010 WY 62, ¶ 5, 231 P.3d 869, 870–71 (Wyo.2010).

[¶ 36] The respective obligations of summary judgment opponents were described in *Hatton v. Energy Electric Co.,* 2006 WY 151, ¶ 9, 148 P.3d 8, 12–13 (Wyo.2006), quoting *Cook v. Shoshone First Bank,* 2006 WY 13, ¶ 12, 126 P.3d 886, 890 (Wyo.2006):

> The party requesting a summary judgment bears the initial burden of establishing a *prima facie* case for summary judgment. If he carries his burden, "the party who is opposing the motion for summary judgment must present specific facts to demonstrate that a genuine issue of material fact exists." *Id.* We have explained the duties of the party opposing a motion for summary judgment as follows:
>
> > After a movant has adequately supported the motion for summary judgment, the opposing party must come forward with competent evidence admissible at trial showing there are genuine issues of material fact. The opposing party must affirmatively set forth material, specific facts in opposition to a motion for summary judgment, and cannot rely only upon allegations and pleadings ..., and conclusory statements or mere opinions are insufficient to satisfy the opposing party's burden.

*See also, Fayard v. Design Committee of the Homestead Subdivision,* 2010 WY 51, ¶ 21, 230 P.3d 299, 305 (Wyo.2010).

[¶ 37] The district court granted Solitude summary judgment on the issue of the validity of the covenants.[4] Solitude's summary judgment documents included copies of the Solitude subdivision covenants stamped with the county clerk's recording information and Ms. Magin's deed showing her lot as being part of the subdivision. Those documents established a prima facie case that the covenants encumbered Ms. Magin's property. She did not present any evidence or affidavits in response to Solitude's summary judgment motion to raise a genuine issue of material fact as to the validity of the covenants. Moreover, in an earlier motion for partial summary judgment, Ms. Magin cited to the original covenants without any suggestion that they were not valid. She stated that the determination of whether the conditions on her property violated the covenants was "simply a legal interpretation of the contract between the parties." We conclude, therefore, that Solitude established the validity of the covenants as a matter of law and summary judgment was appropriate on that issue.

[¶ 38] The district court also ruled that Solitude was entitled to summary judgment on its claims that the conditions on Ms. Magin's property violated the covenants. The covenants require that all fences must meet certain conditions and be approved by the Site Committee and state that nuisances are prohibited and no trash or rubbish "shall be collected, placed or permitted to remain on any lot[.]" Solitude presented the affidavit of the chairman of the Solitude Site Committee and board member, Dan Clancy, in which he averred that he had reviewed evidence of the conditions on Ms. Magin's property and the Site Committee records and concluded that she had erected fences or screens on her property that were not approved by the Site Committee. Solitude also presented an affidavit from William Collins, a consultant in land development regulations and use restrictions. He stated that he inspected Ms. Magin's property on June 10, 2009, took photographs of the conditions upon the property and reviewed the covenant documents. He concluded there were "numerous items of fencing and screening" on Ms. Magin's property that did not comply with the covenants. He also stated:

---

**4.** Ms. Magin specifically challenged the validity of the attorney fees amendment to the covenants.

We will address that issue, *infra.*

I ... observed numerous instances of brush having been collected and stacked in rows on several locations on the property. The Covenants prohibited trash, rubbish or other unsightly items to be collected, placed or permitted to remain on the property. Such stacks of brush are, in my opinion, a violation of the Declaration of Covenants, Conditions and Restrictions.

Mr. Collins' photographs of the conditions on Ms. Magin's property were attached to his affidavit and report.

[¶ 39] Solitude's submissions established a prima facie case that the conditions on Ms. Magin's property violated the covenants. Ms. Magin filed no substantive response to Solitude's motion for summary judgment, and, thus, failed to raise any genuine issue of material fact regarding the violations of the covenants. The district court properly granted Solitude's motion for summary judgment under Rule 56 and ruled that Ms. Magin must bring her property into compliance with the covenants.

### D. Award of Attorney Fees

[¶ 40] The district court awarded attorney fees to Solitude, which included fees paid to both firms that represented it in the present matter against Ms. Magin. An award of attorney fees will not be disturbed unless the district court abused its discretion. *City of Gillette v. Hladky Constr., Inc.*, 2008 WY 134, ¶ 109, 196 P.3d 184, 212 (Wyo.2008). In determining whether the district court abused its discretion, "the ultimate issue is whether the court could reasonably conclude as it did." *Id.*

[¶ 41] Wyoming follows the American rule regarding recovery of attorney fees, meaning that each party is generally responsible for its own attorney fees. *Cline v. Rocky Mountain, Inc.*, 998 P.2d 946, 949 (Wyo.2000). Nevertheless, a prevailing party may be reimbursed for its attorney fees under a contractual or statutory provision which allows for fee shifting. *Id.* The award in this case was based upon an amendment to the Solitude covenants which stated:

Any lot owner who violates these Covenants further agrees to pay all costs incurred by the Association, Site Committee or any lot owner in enforcing these Covenants, including a reasonable attorney's fee whether or not suit is actually filed.

[¶ 42] In the order granting summary judgment, the district court ruled that Ms. Magin's property was "subject to" all of the covenants, including the attorney fees provision. Ms. Magin argues vigorously that there was an issue of material fact as to whether the attorney fees provision was properly adopted. However, all of the material she submitted in an attempt to create an issue of fact was filed late and in a form that failed to comply with the requirement of Rule 56(e) to set forth specific facts.[5]

[¶ 43] Even if we consider the merits of Ms. Magin's argument, she did not establish a genuine issue of material fact as to the validity of the attorney fees provision. As we stated earlier, Solitude established its prima facie case by filing copies of the covenants and the amendments stamped with the county clerk's recording information. The amended covenant which provided for attorney fees stated that it was adopted in accordance with the covenant procedures, which required passage by an affirmative vote of two-thirds of the lot owners. Ms. Magin presents a convoluted argument that the attorney fees amendment could not be approved by a vote of two-thirds of the lot owners because there was insufficient proof that a prior 2006 amendment to the covenants which reduced the percentage of affirmative votes required for amendment from three-quarters to two-thirds was properly adopted.

---

5. As part of her response to Solitude's attorney fees motion, Ms. Magin filed seven CDs including electronic copies of the voluminous documents produced by Solitude in discovery. She also filed an affidavit from a professional community association manager stating that Solitude did not follow the proper procedures in governing the homeowners association or conducting the amendment approval process. She does not, however, discuss these documents on appeal or explain how specific documents support her position that the attorney fee amendment was not properly adopted.

[¶ 44] As part of her request for additional time to respond to Solitude's summary judgment motion, Ms. Magin claimed that she served requests for admissions on Solitude in September 2008 and those requests were never answered and were, therefore, deemed admitted.[6] The requests stated:

REQUEST FOR ADMISSION NO. 1: Admit that Plaintiffs do not pos[s]ess the original ballots to support the March, 2006 First Amendment to Paragraph 32 of the Solitude Homeowners Association Covenants, Conditions and Restrictions, by the affirmative vote of seventy-five (75%) of the then current members of the Solitude Homeowners Association.

REQUEST FOR ADMISSION NO. 2: Admit that Plaintiff is relying solely on a vote tally of the March, 2006 First Amendment to Paragraph 32 of the Solitude Homeowners Association Covenants, Conditions and Restrictions to assert that the First Amendment [was] approved by the required majority.

REQUEST FOR ADMISSION NO. 3: Admit that the July, 2007, Third Amendment to the Solitude Homeowners Association Covenants, Conditions and Restrictions regarding Paragraph 34 was approved by a vote of 78 "yes" ballots.

According to Ms. Magin, if the 2006 amendment to the covenants was not properly adopted allowing amendment to the covenants by a two-thirds vote rather than the three-quarters required by the original covenants, the 2007 attorney fees provision could not be passed by an affirmative vote of less than three-quarters of the lots owners and seventy-eight affirmative votes did not fulfill that requirement. She claims that Solitude's admission it did not have the ballots to demonstrate the 2006 amendment had passed raised an issue of fact as to the validity of the amendment.

[¶ 45] Assuming for the sake of argument that the requests were deemed admitted, they are insufficient to raise a genuine issue of material fact as to the validity of the attorney fees provision. Ms. Magin pre-

sented no authority or legal argument that the failure to maintain the consents would invalidate the 2006 amendment or any evidence to refute the statement in the recorded document that the amendment was properly adopted. Furthermore, although Ms. Magin claims that the seventy-eight affirmative votes received for the attorney fees amendment were insufficient to meet the three-quarters required for passage under the original covenants, she does not direct us to any documents in the record to support her calculation. Thus, without further factual development the admissions do not create a material issue of fact as to the validity of the attorney fees amendment. Ms. Magin ostensibly admitted this deficiency in her proof when she stated in her brief: "The deposition of board members as well as properly answered interrogatories and request[s] would have provided [her] with admissible information that would refute that these amendments were valid." Given our prior holding that the district court did not abuse its discretion by denying her additional time for discovery, we conclude the district court properly ruled as a matter of law that Solitude was entitled to recover its attorney fees for enforcing the covenants.

[¶ 46] We turn now to the substance of the attorney fees award. The attorney fees provision only allowed Solitude to recover fees for enforcing the covenants. Attorney fees associated with clearing the conflict of interest were not "incurred ... in enforcing" the covenants. Segregation of fees allowed by the contract from those that are not is required, if possible. *See, e.g., Cline,* 998 P.2d at 952; *Jensen v. Fremont Motors Cody, Inc.,* 2002 WY 173, ¶ 33, 58 P.3d 322, 330 (Wyo.2002). "Implicit in this directive is the requirement that a party must show segregation is impossible before he may recover for claims for which there is no authorization [for] fee shifting." *Jensen,* ¶ 33, 58 P.3d at 330. When segregation is possible but is not done, the entire fee award is subject to reversal. *Id.; Cline,* 998 P.2d at 952.

---

**6.** Solitude denied being served with the requests for admission and objected to the admissions being raised for the first time at the summary judgment hearing, well over a year after the requests were purportedly served.

[¶ 47]   Solitude filed its motion requesting fees of over $47,000 and included copies of the attorney time sheets.   Mr. Ford's very first time entry addressed the conflict of interest: "conference with Joe and Scott regarding prior representation."   Later entries include: "Review Motion to Disqualify MM & G; conference with JFM regarding same;" "Draft response to Defendant's Motion to Disqualify Counsel;" "Draft affidavit of Joseph F. Moore; revise response to Motion to Disqualify;" "Conference with JFM; revise JFM affidavit."   Thus, the record shows that fees beyond those authorized by the covenants were included in the request and were allowed by the district court in the attorney fees award.

[¶ 48]   Under these circumstances, segregation was obviously possible and, yet, was not done.   In fact, Mr. Ford agreed at oral argument that Solitude was not entitled to recover the fees associated with clearing the conflict.   The district court improperly approved Solitude's attorney fees request without requiring segregation and thereby abused its discretion.   Because segregation was possible but was not done, we reverse the award for all fees generated by Mr. Ford's law firm.

[¶ 49]   There are also equitable reasons to deny Solitude's request that Ms. Magin reimburse it for Mr. Ford's attorney fees.   Wyo. Stat. Ann. § 1–14–126(b) (Lexis-Nexis 2009) states that the court may award attorney fees "in its discretion."   Forfeiture of attorney fees is recognized as one of the remedies for violating Rule 1.9's prohibition against conflicts of interest.   *Simpson,* ¶ 17, 92 P.3d at 287.   *See also, Burrow v. Arce,* 997 S.W.2d 229, 237–38 (Tex.1999); *State ex rel. Special Counsel for Discipline of the Nebraska Supreme Court v. Shapiro,* 266 Neb. 328, 665 N.W.2d 615, 625–26 (2003); *Butler v. Walker,* 932 So.2d 1218, 1221 (Fla. Dist.Ct.App.2006).   This Court stated in *Combs v. Walters,* 518 P.2d 1254, 1255 (Wyo. 1974) (per curiam) that, although a valid contractual provision for recovery of attorney fees is "as much an obligation of the contract as any part of it," attorney fees may be properly disallowed "altogether on the basis that such recovery would be inequitable."

*See also, Graves v. Burch,* 26 Wyo. 192, 181 P. 354 (Wyo.1919).   It is hard to imagine a circumstance where this principle would apply with greater force than here.   Solitude requested that Ms. Magin pay the fees generated by an attorney who had an obvious conflict of interest.   It would certainly be inequitable to require her to pay Mr. Ford's fees under these circumstances.

[¶ 50]   These reasons justify denial of Solitude's motion to the extent that it requested reimbursement of fees generated by Mr. Ford and his firm.   The same rationale does not, however, apply to the award of fees for the work done by the first law firm that represented Solitude.   The first firm's portion of the attorney fees award included $14,647.50 in fees and $120 in costs.   The district court did not abuse its discretion by awarding Solitude fees for the first firm, and that portion of the award is affirmed.   The remainder of the award which was attributable to Mr. Ford's firm is reversed.

## CONCLUSION

[¶ 51]   This case is an example of how resolution of a simple dispute can become unduly complicated, expensive and delayed by the attorneys' conduct.   The record on appeal discloses endless and unseemly jousting between the attorneys about virtually every aspect of the case.   Discovery requests that should have been responded to quickly were unnecessarily opposed by both sides for every little reason imaginable.   It took over two years to reach summary judgment, even though there was no real dispute about the facts of the alleged covenant violations, because of the constant bickering between the attorneys.   We can only imagine the frustration experienced by the district court, including the two different judges who sat on this case.   The district court aptly commented on the attorneys' conduct when it granted Solitude's motion for summary judgment:

> All right, you just cannot read this file and, ... I guess there's some advantage to having a new judge at some point and some disadvantage, but you just can't read this file without ... having some degree of regret that things can deteriorate ... to

this sort of level. It's a very sad, sad set of circumstances.

[¶ 52] Like the district court, we have been frustrated and dismayed by the state of the record and the attitude reflected in the parties' briefs and arguments. While it may be that there are issues or arguments that we did not fully address in this decision, the fault lies with counsel. We have attempted to distill the issues down to those that are determinative.

[¶ 53] Judge O'Brien's concurring opinion in *Hatch v. State Farm Fire & Casualty Co.*, 930 P.2d 382, 398 (Wyo.1997) offers some perceptive observations on this type of behavior by attorneys, though his comments were made in the context of a jury trial:

This case calls to mind the story of the senior attorney advising a new associate: "When you have compelling facts, pound on those facts. When the law is agreeable to your position, pound on the law. When you have neither favorable facts nor law, pound the table." It is less amusing than unsettling.

. . . .

When counsel intentionally drive an otherwise routine case to the margins by infecting the trial with personal issues or by purposefully seeking to supercharge emotions, alert observers quickly recognize that the object is not justice, but victory. The ethical obligation to zealously serve client interests is tempered by the opposing, but no less imposing, obligation to act within the limits of the law-not merely the letter, but also the spirit, of the law. Any failure to appropriately and consistently measure duty to clients against duty to the profession perpetuates the "hired gun" image some lawyers cultivate and we all must live with. Worse, it sustains a popularly held conception that our professional ethic accepts the notions that success justifies, and occasionally necessitates, excessive zeal and that the cost of victory is irrelevant. . . . When a case is measured, not by the merit of the cause, the quality of the evidence, or the logic of the arguments, but by the level of invective, something is amiss. A trial [and other court proceedings] then becomes an ordeal which is nei-

ther dignified nor appropriate and, predictably, the result reflects the performance; the process is demeaned, as are the participants.

[¶ 54] Affirmed in part and reversed in part.