2012 WY 111

Courtney EVANS, as beneficiary of the Finlay Family Trust and contingent beneficiary of the Joan Henriette Finlay Trust, Appellant (Plaintiff),

v.

Peter F. MOYER, individually and in his capacity as the Trustee of the Finlay Family Trust and the Joan Henriette Finlay Trust, Appellee (Defendant).

No. S–11–0220.

Supreme Court of Wyoming.

Aug. 15, 2012.

Representing Appellant: Lance J. Schuster and Carrie J. Gorgacz of Beard St. Clair Gaffney PA, Idaho Falls, Idaho. Argument by Mr. Schuster.

Representing Appellee: Elizabeth N. Moore and Joseph F. Moore, Jr. of Moore & Myers, LLC, Jackson, Wyoming. Argument by Ms. Moore.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1]   As a beneficiary of a trust created by her grandfather, Courtney Evans brought an action against the trustee, Peter F. Moyer, for an accounting and distribution of income.   The district court generally ruled in Mr. Moyer's favor, and Ms. Evans appealed arguing that the district court's interpretation of the trust was erroneous and Mr. Moyer's accounting was insufficient.   We affirm.

## ISSUES

[¶ 2]   Ms. Evans presents a lengthy statement of the issues on appeal:

A.   Whether the district court erred in holding that the Plaintiff is not entitled to regular, quarterly distributions of income from the Finlay Family Trust.

B.   Whether the Plaintiff is entitled to distributions of income that have not been made from the Finlay Family Trust.

C.   Whether the Plaintiff is a beneficiary of the Finlay Family Trust and entitled to regular accountings from the Trustee.

D:   Whether the district court erred in determining that Mr. Moyer's final accounting was sufficient.

E.   Whether the Trustee may make distributions of principal for the benefit of Courtney Evans during the lifetime of her father Bruce Evans so as to assure the support, maintenance, health and education of Courtney Evans.

F.   Whether the district court erred in prohibiting the Plaintiff from conducting discovery.

G.   Whether the district court erred in finding that the Sixth Amendment had application and that Pamela Evans properly received distributions from the Finlay Family Trust.

H.   Whether the district court erred in failing to require the Trustee to segregate for accounting purposes the shares of Courtney and Dillon in the Finlay Family Trust.

I.   Whether the district court erred in failing to grant Plaintiff's motion to remove Peter Moyer as Trustee of the Finlay Family Trust.

J.   Whether the Court erred in failing to award the Plaintiff her attorney fees and costs.

Mr. Moyer's statement of the issues is similar, although he presents an additional issue:

1.   Does this court lack jurisdiction to consider the appeal because Ms. Evans failed to file a notice of appeal from the district court's final order within the time allotted by Rule 2.02?

a. Did Ms. Evans' improper post-judgment motion fail to toll the time for filing a notice of appeal?

b. Did Ms. Evans fail to appeal from the final order disposing of issues in this case?

## FACTS

[¶ 3]   Ms. Evans and her brother Dylan are Robert Finlay's grandchildren. Prior to his death in 2003, Mr. Finlay executed a trust agreement and numerous amendments. Upon his death, Mr. Finlay's trust estate was divided into two trusts, the Joan Henriette Finlay Trust to benefit his wife and the Finlay Family Trust to benefit Ms. Evans and Dylan. The Finlay Family Trust included provisions for distribution of income and principal. It also included provisions designed to avoid the federal generation skipping transfer (GST) tax and to prevent distributions of principal to the beneficiaries while their father, Bruce Evans, was still living. Mr. Moyer, who is Mr. Finlay's nephew, was designated as trustee.

[¶ 4]   Ms. Evans filed a petition against Mr. Moyer seeking an accounting of the Finlay Family Trust activities; distribution of income; a declaration of the meaning of the trust documents; and attorney fees. After the trustee answered her petition, Ms. Evans filed several motions, including motions to compel discovery and a motion for temporary orders requiring the trustee to pay her educational costs. The district court denied Ms. Evans' motion for temporary orders but ordered Mr. Moyer to provide an accounting. It also stayed the discovery issues, pending a hearing on the meaning of the trust documents.

[¶ 5]   Mr. Moyer prepared an accounting, but at the hearing held December 29, 2010, the district court ordered Mr. Moyer to supplement his accounting. Mr. Moyer filed another accounting on January 18, 2011. The district court issued a decision letter on April 5, 2011, generally ruling that the Trustee was not required to make distributions of principal for Ms. Evans' education; the interest income had been properly distributed; Ms. Evans had received all income owed to her; Mr. Moyer properly allocated the prin-cipal and income of the trust; Mr. Moyer's previous accountings were inadequate; and ordering Mr. Moyer to provide a complete accounting. The district court directed the trustee's attorney to prepare the order. The Order on Petition for Accounting and Distribution of Income entered April 22, 2011, contained, in addition to the rulings in the decision letter, a denial of attorney fees to Ms. Evans.

[¶ 6]   Ms. Evans filed a motion to alter or amend judgment, asserting that the district court had committed a number of errors of law. She contested the denial of attorney fees in her motion to alter or amend judgment and filed a separate motion for attorney fees. Mr. Moyer filed his supplemental accounting on May 16, 2011, and Ms. Evans again objected, posing seventeen questions about the trust account.

[¶ 7]   The district court entered an order on June 28, 2011, denying Ms. Evans' motion to alter or amend judgment and her motion for attorney fees. It also ordered the parties to "provide a concise and cogent memorandum explaining whether [Ms. Evans] has a right to demand an accounting to be filed. In the alternative, [Mr. Moyer] can provide a written response to the seventeen questions raised in [Ms. Evans'] objection...." The parties filed memoranda addressing the legal issue of whether Ms. Evans was entitled to an accounting under the Uniform Trust Code and/or the trust document. In addition, Mr. Moyer filed a response to the seventeen questions posed in Ms. Evans' objection to his accounting.

[¶ 8]   On July 18, 2011, Ms. Evans filed a notice of appeal, appealing from the district court's April 22, 2011 order and its June 28, 2011 order. On October 7, 2011, the district court entered an order ruling the Uniform Trust Code in general and the specific accounting requirements contained in the code did not apply to the trust because it predated the adoption of the code. The district court also stated that Ms. Evans was "not entitled to anything else by way of her Petition at this time."

## DISCUSSION

### 1. Jurisdiction

[¶ 9] A determination that this Court does not have jurisdiction over the appeal would be dispositive; consequently, we consider that issue first. "The existence of jurisdiction is a question of law and our review is *de novo.*" *Mathewson v. Estate of Nielsen,* 2011 WY 71, ¶ 11, 252 P.3d 958, 961 (Wyo.2011).

[¶ 10] Mr. Moyer claims Ms. Evans did not file her notice of appeal in a timely manner and, therefore, did not properly invoke the jurisdiction of this Court. Specifically, he argues that her motion to alter or amend the judgment filed after the district court issued its April 22, 2011 Order on Petition for Accounting and Distribution of Income was actually an improper motion for reconsideration and did not toll the time for filing the appeal. According to Mr. Moyer, Ms. Evans should have filed a notice of appeal within thirty days of the district court's entry of its April 22, 2011 order.

[¶ 11] Our jurisdiction is limited to appeals from final appealable orders. *Plymale v. Donnelly,* 2006 WY 3, ¶ 4, 125 P.3d 1022, 1023 (Wyo.2006). In order to invoke this Court's jurisdiction, a notice of appeal must be filed within thirty days of entry of a final appealable order. W.R.A.P. 2.01. "A post-judgment motion which is otherwise titled but, in actuality, only requests reconsideration of the district court's judgment will be considered an improper motion for reconsideration and will not toll the time for filing a notice of appeal." *Mathewson,* ¶ 12, 252 P.3d at 961.

[¶ 12] Ms. Evans filed a motion to alter or amend judgment under W.R.C.P. 59(e).

A Rule 59(e) motion is only appropriate if one of three grounds exists: 1) the availability of new evidence not previously available; 2) an intervening change in controlling law, or 3) the need to correct a clear error of law or to prevent manifest injustice. It is not a mechanism to relitigate issues that the court has already decided, nor should parties make additional arguments which should have been made before judgment.

*Ragsdale v. Hartford Underwriters Ins. Co.,* 2007 WY 163, ¶ 5, 169 P.3d 78, 80 (Wyo.2007) (citations omitted).

[¶ 13] In her motion to alter or amend judgment, Ms. Evans identified several errors of law with regard to the district court's interpretation and application of the trust instrument. She also asserted the district court erred by prohibiting her from conducting discovery. Ms. Evans additionally challenged the district court's ruling that she was not entitled to an attorney fees award and filed a separate motion for attorney fees.

[¶ 14] We agree with Mr. Moyer that the grounds set forth in Ms. Evans' motion regarding the interpretation of the trust document and discovery were simply reiterations of issues the district court already considered or arguments which she should have made prior to entry of the order on her petition and, therefore, were actually requests for reconsideration and did not toll the time for filing a notice of appeal. *Ragsdale,* ¶¶ 6–7, 169 P.3d at 80–81; *Mathewson,* ¶ 17, 252 P.3d at 962–63. The outstanding attorney fees issue also does not necessarily preclude a finding that the district court's order was a final judgment. In *Witowski v. Roosevelt,* 2009 WY 5, ¶ 10 n. 1, 199 P.3d 1072, 1076 n. 1 (Wyo.2009), we stated that "entry of a final judgment and the time for appeal is not necessarily delayed by an outstanding motion for attorney fees."

[¶ 15] Nevertheless, another aspect of the district court's April 22, 2011 order compels us to conclude it was not a final appealable judgment. The order stated:

The Court previously ordered Mr. Moyer to prepare an accounting. The Court has reviewed the accounting and finds that it does not provide the detail needed to explain all income and distributions so that a third person could understand them. The Court again orders Mr. Moyer to provide an accounting listing the principal, the income allocations, the expenses paid, and the distributions made to which beneficiary for every year he has been acting as Trustee.

In response, Mr. Moyer submitted a revised accounting on May 16, 2011, and Ms. Evans again objected to it. The district court then issued a decision letter and entered a corresponding order on June 28, 2011, in which it asked the parties to brief the issue of whether Ms. Evans was entitled to an accounting at all or, in the alternative, gave Mr. Moyer the opportunity to respond to seventeen questions raised by Ms. Evans in her objection to his May 16, 2011 accounting. Mr. Moyer responded to the questions and both parties briefed the issue of whether Ms. Evans was entitled to an accounting. On October 7, 2011, the district court ruled that Ms. Evans was not entitled to an accounting.

[¶ 16] As this procedural history makes clear, there were several issues regarding Ms. Evans' petition for an accounting which were outstanding after the April 22, 2011 order. In *Woods v. Woods*, 2001 WY 131, 36 P.3d 1142 (Wyo.2001), the plaintiff sought an accounting of trust activities. The defendant appealed the district court's interim accounting and distribution order. We held that the order was not a final appealable order under W.R.A.P. 1.05:

> In the underlying case, both Roger and Marquietta Woods have asked for an accounting of the administration of the trust. While an interim accounting and an interim distribution of trust assets have been accomplished, there has not yet been a final accounting. The district court maintains jurisdiction to take such further action as is necessary to accomplish the final accounting. Thus, the order on appeal is clearly an interlocutory order and not appealable at this time.

*Id.*, ¶ 9, 36 P.3d at 1144–45. Applying those principles here, the district court's April 22, 2011 order which commanded Mr. Moyer to provide a more detailed accounting was not a final order. As such, the failure to appeal that order within thirty days did not deprive this Court of jurisdiction.

[¶ 17] Ms. Evans filed her notice of appeal on July 18, 2011, appealing the district court's April 22, 2011 order and the June 28, 2011 order denying her motion to alter or amend the judgment. At that point, the accounting issue still was not resolved

and her notice of appeal was premature. However, a premature notice of appeal becomes effective upon entry of a final appealable order. W.R.A.P. 2.04. So, when the district court entered its final order in October 2011, the notice of appeal became effective as to those orders identified therein.

[¶ 18] One more matter requires our attention prior to turning to the merits of this case. Ms. Evans did not amend her notice of appeal after the October 7, 2011 order and, consequently, that order was not identified as being appealed in the notice of appeal. W.R.A.P. 2.07 sets forth the requirement for a notice of appeal, including "identifying the judgment or appealable order that is being appealed and attaching, as an appendix, the order or judgment that is being appealed." *Painovich v. Painovich*, 2009 WY 116, ¶ 11, 216 P.3d 501, 504 (Wyo.2009). Thus, the notice of appeal only perfects an appeal of the order(s) identified in the notice. *Nish v. Schaefer*, 2006 WY 85, ¶ 23, 138 P.3d 1134, 1143 (Wyo.2006).

[¶ 19] In the October 7, 2011 order, the district court ruled that the provisions of the Uniform Trust Code did not apply to this trust as it predated the adoption of the Code and Ms. Evans was not entitled to an accounting. By ruling Ms. Evans was not entitled to an accounting at all, the district court essentially mooted the outstanding issues as to the adequacy of the accountings produced by Mr. Moyer. To the extent Ms. Evans' appeal challenges the district court's rulings in the October 2011 order or the sufficiency of the accountings, those claims and arguments are not properly before us because Ms. Evans did not identify that order in her notice of appeal. *Painovich*, ¶ 11, 216 P.3d at 504.

### 2. Interpretation of Trust Documents

[¶ 20] We turn now to the district court's rulings on the meaning of the trust, which the court determined on summary judgment. Summary judgments are governed by W.R.C.P. 56(c):

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admis-

sions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

We review a district court's summary judgment rulings de novo, using the same materials and following the same standards as the district court. The facts are reviewed from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record.

*Grynberg v. L & R Exploration Venture,* 2011 WY 134, ¶ 16, 261 P.3d 731, 736 (Wyo. 2011) (citations omitted).

[¶ 21] Interpretation of an unambiguous trust agreement is a matter of law for the court. *Rock Springs Land and Timber, Inc. v. Lore,* 2003 WY 100, ¶ 12, 75 P.3d 614, 619 (Wyo.2003). The meaning of a trust is determined by the same rules that govern the interpretation of contracts. In interpreting a trust, our primary purpose is to determine the intent of the settlor. *Wells Fargo Bank Wyoming, N.A. v. Hodder,* 2006 WY 128, ¶ 21, 144 P.3d 401, 409 (Wyo.2006); *First Nat'l Bank & Trust Co. v. Brimmer,* 504 P.2d 1367, 1369 (Wyo.1973). We construe the trust instrument as a whole, attempting to avoid a construction which renders a provision meaningless. *Id.* "We strive to reconcile by reasonable interpretation any provisions which apparently conflict before adopting a construction which would nullify any provision." *Wells Fargo,* ¶ 21, 144 P.3d at 409. *See also, Purcella v. Purcella,* 2011 WY 124, ¶ 14, 258 P.3d 730, 734–35 (Wyo. 2011).

[¶ 22] The Fourth Amendment to the trust provided that, upon the death of the Settlor, the trustee would divide the trust estate into two trusts, the Joan Henriette Finlay Trust to benefit the Settlor's wife and the Finlay Family Trust. Upon the death of the Settlor's wife, "the entire remaining principal of the Joan Henriette Finlay Trust shall be added to and become a part of the Finlay Family Trust. . . ." The Trust included a one-time distribution to Settlor's daughter, Pamela, and stated that the Settlor's grandchildren, Ms. Evans and her brother Dylan, were to share the Finlay Family Trust

[¶ 23] In the Fifth Amendment to the Trust, the Settlor appointed Mr. Moyer as Trustee and revised the one-time distribution to Pamela. It also stated in Article VII regarding the Finlay Family Trust:

(2) *Division of Trust Assets.* Upon Settlor's death, Trustee shall divide the assets of this Trust into as many equal shares as may be necessary in order to provide (i) one share for each grandchild of Settlor surviving at Settlor's death. . . . As of execution of this document, Settlor has two grandchildren, namely Courtney Evans and Dillon [1] Evans. . . .

(3) *Beneficiaries Under Age Thirty–Five.* If any grandchild/beneficiary under paragraph (2) of this Article is under the age of thirty-five at the time the distribution of such beneficiary's share is to be made to the beneficiary, Trustee shall retain such beneficiary's share IN TRUST, to hold and manage the same for the benefit of the beneficiary. All of the net income shall be paid in convenient installments to or for the benefit of the beneficiary until complete distribution of the share as hereinafter provided. In addition to income, the Trustee may pay to or apply for the benefit of the beneficiary such sums from the principal of the beneficiary's share as may be deemed necessary in the sole discretion of Trustee, taking into account all other sources of income or support of the beneficiary of which Trustee has knowledge, to ensure the proper support, maintenance, health and education of the beneficiary. When the beneficiary reaches age twenty-five (25), Trustee shall pay to the beneficiary one-third (1/3) of the value of the trust principal as then constituted. When the beneficiary reaches age thirty (30), Trustee shall pay to the beneficiary one-half (1/2) of the value of the remaining trust

---

**1.** Settlor's grandson's name is alternatively spelled as Dylan and Dillon in various docu-

ments.

principal. When the beneficiary reaches age thirty-five (35), Trustee shall distribute all the remaining principal and undistributed income of the trust to the beneficiary, outright and free of trust. In the event beneficiary has already attained age twenty-five (25), age thirty (30) or age thirty-five (35) at the time the trust is divided into shares pursuant to Section (2) above, Trustee shall, upon making the division, distribute to the beneficiary one-third (1/3), two-thirds (2/3) or all of the beneficiary's share, respectively....

Notwithstanding the distribution provisions of the preceding paragraph, no principal distribution shall be made to Courtney Evans or Dillon Evans during the lifetime of their father, Bruce Evans. In the event a distribution of principal to either beneficiary is otherwise directed hereunder and Bruce Evans shall be alive, the trustee shall retain said amount, in trust, for the benefit of the beneficiary under the terms hereof as if the beneficiary was then under the age of twenty-five years. Any principal distribution retained in trust under this provision shall be released to the beneficiary upon the death of Bruce Evans.

The Sixth Amendment stated:

Notwithstanding anything to the contrary set forth in the Trust Agreement, as previously amended, if any vesting or distribution to the issue of Settlor could result in Federal generation skipping tax, then said vesting and distribution shall instead accrue to Settlor's daughter, Pamela....

[¶ 24] Ms. Evans requested that the district court order Mr. Moyer to make distributions of net income from the Trust to her at least on a quarterly basis. The district court ruled:

Mr. Moyer as Trustee determined that the distributions of the Trust resulted in generation skipping transfer taxes. Therefore, the Sixth Amendment to the Trust was triggered. The generation skipping transfer tax made Pamela Mitchell a contingent beneficiary for the Trust. While Pamela Mitchell was the beneficiary during the time the Trust is subject to the tax, Ms. Evans was not a beneficiary eligible to receive income distributions from the Trust.

The Trust has decreased in size and is no longer subject to generation skipping tax and Courtney and Dylan Evans have once again become beneficiaries of the Trust eligible to receive distributions of income. The Trust specifies that these distributions are to be in "convenient installments." The Trust does not contain the requirement found in the Joan Henriette Finlay Trust specifying that the disbursement must be quarterly. Had the intent been to provide quarterly payments of income to Ms. Evans and Dylan, the Trust would have adopted the same language used in the Joan Henriette Finlay Trust. The Court finds that the payments should be in convenient installments as the trust requires.

[¶ 25] Ms. Evans argues on appeal that the district court erred by determining she was not a beneficiary. Even a cursory reading of the district court's ruling indicates that it did, in fact, rule that Ms. Evans and Dylan are beneficiaries. She also argues that the district court erred in concluding that the Sixth Amendment was properly employed in earlier years to provide payments to her mother, Pamela, instead of her and her brother in order to avoid the GST tax.

[¶ 26] The GST tax is a federal tax on generation-skipping transfers of wealth. 26 U.S.C. § 2601 *et seq.* There is, however, an exemption that protects a certain amount of the transfer from taxes. 26 U.S.C. § 2631. Ms. Evans claims that when Mr. Finlay died in 2003, the value of the Finlay Family Trust was less than the exempt amount; therefore, no generation skipping transfer taxes were owed. Mr. Moyer apparently took the position that the combined values of the Joan Henriette Finlay Trust and the Finlay Family Trust should be considered and that amount was in excess of the exemption for the years in question. Ms. Evans does not cite any legal authority to support her method of determining whether GST tax could be due or to establish that Mr. Moyer's method was erroneous. We do not address issues which are not supported by cogent argument or citation to pertinent legal authority. *See*

*Shaw Constr., LLC v. Rocky Mountain Hardware, Inc.,* 2012 WY 60, ¶ 23, 275 P.3d 1238, 1244 (Wyo.2012).

[¶ 27] Moreover, the trustee is given broad discretion in administering the trust, and the trust provides that any income or principal may be distributed for the "benefit" of the beneficiary. The amounts allocated to Pamela were actually distributed for the "benefit" of the beneficiaries, specifically to pay their educational expenses. Ms. Evans has not established that Mr. Moyer did anything improper by distributing trust proceeds through Pamela.

[¶ 28] Ms. Evans' next argument is that the district court erred by failing to define the term "convenient installments" as used in the Finlay Family Trust. The trust states: "All of the net income shall be paid in convenient installments to or for the benefit of the beneficiary until complete distribution of the share as hereinafter provided." She claims that, although "convenient installments" is not defined in the Finlay Family Trust, it is defined in the Joan Henriette Finlay Trust:

> Commencing with the date of the Settlor's death, the Trustee shall pay to the Settlor's wife during her lifetime all the income from the Joan Henriette Finlay Trust in convenient installments but no less frequently than quarter-annually.

Ms. Evans argues that the district court should have, therefore, required the trustee to make payments to the beneficiaries of the Finlay Family Trust on at least a quarterly basis.

[¶ 29] The district court rejected this argument, stating "[h]ad the intent been to provide quarterly payments of income to Ms. Evans and Dylan, the Trust would have adopted the same language used in the Joan Henriette Finlay Trust." This interpretation is supported by our contract interpretation rules, which hold that the use of specific words in one part of a contract and the omission of the language in another part is considered intentional. *See Mathisen v. Thunder Basin Coal Co.,* 2007 WY 161, ¶ 16, 169 P.3d 61, 66 (Wyo.2007). Having determined that Ms. Evans was not entitled to

quarterly income payments, the district court simply ruled that the installments must be convenient. The word "convenient" means "suitable or agreeable to the needs or the circumstances of a particular situation." *Webster's New Third Int'l Dictionary* 497 (2002). The term obviously needs context for definition. Although Ms. Evans criticizes the district court for failing to define the term, she did not make any argument other than the payments should be made quarterly. Under these circumstances, the district court did not err by failing to further define the term.

[¶ 30] The district court also ruled that the Trust prohibited Mr. Moyer from making any principal distributions to Ms. Evans while her father, Bruce Evans, is still alive. As we noted above, the Fifth Amendment states that "no principal distribution shall be made to [Ms. Evans] during the lifetime of" her father, Bruce Evans. Ms. Evans argued that, while the provision prohibited direct principal distributions "to" her, principal could be distributed "for her benefit." The same contract interpretation principle which defeated Ms. Evans' argument regarding quarterly income payments supports her argument here. Unlike other provisions of the Finlay Family Trust which repeatedly use the term "to or for the benefit of" the beneficiary, the Fifth Amendment only prohibits direct distributions "to" Ms. Evans while her father is living. Since the Settlor obviously knew how to use the term "to or for the benefit of" and chose in the latter amendment to limit the prohibition to distributions "to" the beneficiaries, we conclude Mr. Moyer is not prohibited from making principal distributions for the benefit of the beneficiaries while Mr. Evans is still alive.

[¶ 31] This interpretation is consistent with the allowable purposes for invading the principal to "ensure the proper support, maintenance, health and education of the beneficiary." If the trustee was prohibited from making principal distributions for the benefit of the beneficiaries any time before Bruce Evans dies, the purposes of the trust could be frustrated. In addition, by prohibiting direct distributions "to" Ms. Evans the

provision alleviates any concern that Mr. Evans will somehow influence or manipulate Ms. Evans into using the principal for reasons not approved by the Settlor.

[¶ 32]   Nevertheless, even though we have ruled that Mr. Moyer has the authority to make principal distributions for the benefit of Ms. Evans while Mr. Evans is still living, he also had the authority to refuse to distribute any principal.   Paragraph (3) states the trustee "may pay to or apply for the benefit of the beneficiary such sums from the principal of the beneficiary's share as may be deemed necessary in the sole discretion of the Trustee, taking into account all other sources of income or support of the beneficiary of which Trustee has knowledge, to ensure the proper support, maintenance, health and education of the beneficiary."   By using the verb "may" the Settlor made the provision non-mandatory and by giving the trustee sole discretion the Settlor placed that decision squarely with Mr. Moyer.   Therefore, while we disagree with the district court's decision that the trustee is prohibited from making distributions for the benefit of Ms. Evans while Mr. Evans is alive, we agree that Mr. Moyer has the sole discretion to make such distributions or not.

[¶ 33]   In a somewhat confusing argument, Ms. Evans claims that she has not been paid the full amount of income due her under the terms of the trust and that the trustee improperly allocated income as principal.   The district court ruled that all payments of income owed to Ms. Evans had been paid.   Ms. Evans asserts that she has only been directly paid $235 and for the years 2004 through 2007, she was entitled to $25,351 in income payments.   Mr. Moyer responds that all income plus a significant amount of principal has been paid to or for Ms. Evans' benefit.   The accounting indicates Mr. Moyer distributed over $54,000 to the University of Alabama to pay Ms. Evans' educational expenses, and that amount exceeded Ms. Evans' share of the trust income.   Given that funds in excess of the income owed to Ms. Evans have been applied to her benefit, we affirm the district court's ruling.

[¶ 34]   Next, Ms. Evans argues Mr. Moyer did not properly segregate her interest from her brother Dylan's interest.   The district court did not rule on this particular aspect of her argument.   The trust states in the Fifth Amendment, Art. VII(2):

> Upon Settlor's death, Trustee shall divide the assets of this Trust into as many equal shares as may be necessary in order to provide (i) one share for each grandchild of Settlor surviving at Settlor's death....

However, the trust also authorized the trustee:

> To hold and retain the principal of the Trust Estate undivided until actual division shall become necessary in order to make distributions; to hold, manage, invest, and account for the several shares or parts thereof by appropriate entries on the Trustee's books of account; and to allocate to each share or part of share its proportionate part of all receipts and expenses; provided, however, the carrying of several trusts as one shall not defer the vesting in title or in possession of any share or part of share thereof.

The accounting demonstrates that Mr. Moyer has retained the trust principal undivided, but kept records of the distributions to and/or for the benefit of each beneficiary.   Ms. Evans has not demonstrated how this accounting method violates the terms of the trust.

### 3.  *Removal of Trustee*

[¶ 35]   Ms. Evans filed a motion to remove Mr. Moyer as trustee of the Finlay Family Trust.   Although the district court did not expressly rule on her request, it was obviously denied by implication.   She claims on appeal that Mr. Moyer should have been removed.

[¶ 36]   In *Kerper v. Kerper*, 780 P.2d 923, 938 (Wyo.1989), this Court stated that the district court has equitable powers to remove a trustee.   *See also*, Wyo. Stat. Ann. § 2-3-210 (LexisNexis 2011).   We said:

> [T]he court has sound discretion to make a determination as to removal.   We will not disturb an exercise of district court discretion unless its actions are shown to have been made arbitrarily and capriciously and in disregard of the use of sound judgment

regarding what is right under the circumstances.

*Kerper,* 780 P.2d at 938. Ms. Evans claims that removal of Mr. Moyer as trustee is required because he made principal and income distributions to a non-beneficiary and failed to adequately account to the beneficiaries, segregate the shares of the trust for accounting purposes, and properly administer the trust under the GST tax provisions. We have already determined each of these issues in favor of Mr. Moyer in one way or another. As such, they do not form a basis for removal. The district court did not abuse its discretion by refusing to remove Mr. Moyer as the trustee of the Finlay Family Trust.

### 4. Attorney Fees

[¶ 37] Ms. Evans claims the district court erred by refusing to award her attorney fees. The question of whether there is legal authority to award attorney fees is one of law, which we review *de novo. See, Thorkildsen v. Belden,* 2011 WY 26, ¶ 8, 247 P.3d 60, 62 (Wyo.2011); *Ultra Resources, Inc. v. Hartman,* 2010 WY 36, ¶ 149, 226 P.3d 889, 935 (Wyo.2010); *Breitenstine v. Breitenstine,* 2006 WY 48, ¶ 12, 132 P.3d 189, 193 (Wyo.2006). The final attorney fee award is, however, reviewed for abuse of discretion. *Mueller v. Zimmer,* 2007 WY 195, ¶ 11, 173 P.3d 361, 364 (Wyo.2007).

[¶ 38] Wyoming follows the "American rule" with regard to attorney fees, meaning that each party is generally responsible for its own attorney fees. *Magin v. Solitude Homeowner's Inc.,* 2011 WY 102, ¶ 41, 255 P.3d 920, 932 (Wyo.2011); *Cline v. Rocky Mountain, Inc.,* 998 P.2d 946, 949 (Wyo.2000). However, a party may be reimbursed for its attorney fees if a contractual or statutory provision allows. *Id.* Ms. Evans claims that Wyo. Stat. Ann. § 4–10–1004 (LexisNexis 2011) authorizes an award of attorney fees:

> In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy.

Section 4–10–1004 is part of the Uniform Trust Code and since we have determined that the district court's October 7, 2011 order that the Uniform Trust Code does not apply is final, that determination would apply to Ms. Evans' attorney fees claim as well.

[¶ 39] However, prior to its final decision that the code did not apply in this case, the district court ruled:

> With regard to the Plaintiff's Motion for Attorney's Fees the Court finds that under the justice and equity requirement of W.S. § 4–10–1004 the Plaintiff has caused the Trustee to engage an attorney to defend Plaintiff's efforts to require the Trustee to disburse funds to Plaintiff. The Court also finds that the expenses and fees incurred in obtaining the Accounting that has been requested by Plaintiff are insignificant compared to the defense of Plaintiff's main claim. Therefore, the Plaintiff is not awarded her attorney fees and costs and Plaintiff's Motion for Attorney's Fees is hereby denied.

[¶ 40] Even if the code did apply here, we would agree with the district court's determination that justice and equity do not support an award of attorney fees to Ms. Evans given she has not demonstrated that Mr. Moyer improperly performed any part of his duties as trustee.

### 5. Discovery

[¶ 41] Over the course of this action, Ms. Evans filed a number of motions to compel. The district court stayed the discovery issues pending its decision on the legal issues. Ms. Evans claims the district court should not have granted summary judgment without first allowing discovery.

[¶ 42] The trial court has broad discretion in controlling discovery; consequently, we review decisions relating to discovery for abuse of discretion. *Global Shipping & Trading v. Verkhnesaldincky Metallurgic Co.,* 892 P.2d 143, 145 (Wyo.1995). *See also, Cramer v. Powder River Coal, LLC,* 2009 WY 45, ¶ 14, 204 P.3d 974, 979 (Wyo.2009). However, we have also stated that "ordinari-

ly, discovery on the issues which are the subject of the summary judgment motion should be allowed to be completed before a motion for summary judgment is scheduled, heard, and decided." *Abraham v. Great Western Energy, LLC,* 2004 WY 145, ¶ 19, 101 P.3d 446, 455 (Wyo.2004).

 [¶ 43] We conclude that, under the specific circumstances presented here, the district court did not abuse its discretion by refusing Ms. Evans the opportunity to conduct formal discovery. There were two basic claims raised by Ms. Evans' petition—a request for declaration of the meaning of the trust terms and a request for an accounting. Interpretation of an unambiguous trust is done as a matter of law and no additional evidence is needed. Hence, Ms. Evans did not need discovery to effectively litigate the legal question about the meaning of the trust.

[¶ 44] The matters on which Ms. Evans claims she needed discovery pertained to Mr.

Moyer's administration of the trust. Mr. Moyer prepared an initial accounting, and the district court ordered Mr. Moyer to provide more complete accountings and records on two additional occasions. Mr. Moyer submitted the accountings to the court and included numerous financial record attachments. Pursuant to the accounting process, Ms. Evans was provided with the relevant information. Moreover, in the end, the district court ruled that she was not entitled to an accounting and she did not appeal that order. The district court did not abuse its discretion by denying her discovery requests.

[¶ 45] Affirmed.