# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 162

### OCTOBER TERM, A.D. 2022

#### December 28, 2022

EOG RESOURCES, INC., a Delaware corporation,

Appellant
(Defendant),

v.

S-22-0095

JJLM LAND, LLC, a Wyoming limited liability company,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
The Honorable Stuart S. Healy III, Judge

*Representing Appellant:*
Isaac Sutphin, P.C., Jeffrey S. Pope, Holland & Hart LLP, Cheyenne, Wyoming. Argument by Mr. Pope.

*Representing Appellee:*
Kendal R. Hoopes, Yonkee & Toner, LLP, Sheridan, Wyoming. Argument by Mr. Hoopes.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]  JJLM Land, LLC (JJLM) sued EOG Resources, Inc. (EOG) for breach of the parties' surface use and damage agreements and sought double damages under Wyo. Stat. Ann. § 30-5-405(b) (LexisNexis 2021) (part of what we have referred to as the Wyoming Split Estate Act, Wyo. Stat. Ann. §§ 30-5-401 to 30-5-410 (LexisNexis 2021)).  JJLM asserted EOG underpaid its obligations under the surface use and damage agreements. EOG admitted underpayment but argued the double damages statute did not apply because it had paid a portion of the amount owed.  The district court granted summary judgment to JJLM.  It concluded the double damages provision in § 30-5-405(b) applies when an oil and gas operator underpays an installment under a surface use and damage agreement and JJLM's claim for double damages was not barred by the statute of limitations or laches. The court denied EOG's subsequent motion to alter or amend judgment under Wyoming Rule of Civil Procedure (W.R.C.P.) 59(e).  We affirm the district court's summary judgment decision.  We lack jurisdiction to review the court's denial of EOG's Rule 59(e) motion.  We grant JJLM's request for its attorney fees and costs on appeal.

## ISSUES

[¶2]  The dispositive issues are:

1.      Did the district court err by deciding § 30-5-405(b) applies when an oil and gas operator underpays an installment owed to a surface owner under a surface use and damage agreement?

2.      Did the district court err by concluding JJLM's claim for double damages was not barred by the statute of limitations?

3.      Did the district court abuse its discretion by determining JJLM's claim for double damages was not barred by laches?

4.      Do we have jurisdiction to review the district court's denial of EOG's Rule 59(e) motion?

5.      Is JJLM entitled to its attorney fees and costs on appeal?

## FACTS

[¶3]  In February 2011, JJLM's predecessor, the Drake Family Revocable Land Trust (Trust), entered into a "Surface and Damage Agreement" (2011 SDA) with EOG's predecessor, Yates Petroleum Corporation (Yates).  Under this agreement, the Trust granted Yates the right to enter and use the Trust's ranch lands in Campbell County for its oil and gas operations; in exchange, Yates agreed to compensate the Trust for any damage

1

caused by its operations, including making annual rental payments to the Trust for each surface disturbance drilled or constructed on the lands (e.g., wells, access roads, and pipelines). The parties amended the 2011 SDA three times between September 2013 and November 2015. The amendments added land to be covered by the 2011 SDA and increased the amounts of the annual rental payments owed by Yates to the Trust.

[¶4]    Sometime between September 2013 and September 2015, the Trust transferred the ranch lands to JJLM. In October 2016, EOG took over Yates' oil and gas operations on the ranch lands, including its payment obligations under the 2011 SDA. In November 2019, JJLM and EOG executed a new "Surface Use and Damage Agreement" (2019 SUA), which superseded the 2011 SDA and created new annual payment obligations for EOG.

[¶5]    After the 2019 SUA went into effect, JJLM began closely monitoring EOG's annual payments and determined they did not comply with the 2019 SUA. In July and August 2020, JJLM asked EOG to correct the payments. When EOG did not respond to JJLM's concerns, JJLM sent EOG a "Notice Pursuant to Wyo. Stat. Ann. § 30-5-405(b)" (notice of default) which asserted EOG was in default under the 2019 SUA and demanded EOG timely cure the default or JJLM would file a lawsuit seeking double damages under § 30-5-405(b). EOG received the notice of default on September 14, 2020.

[¶6]    On December 8, 2020, after EOG failed to timely cure the default, JJLM sued EOG for breach of contract and double damages under § 30-5-405(b). EOG answered the complaint and asserted various affirmative defenses, including that JJLM's claim for double damages was barred by the statute of limitations and laches. In March 2021, EOG admitted it owed $377,978.91 to JJLM under both the 2011 SDA and the 2019 SUA and filed a motion to deposit that amount with the court pursuant to W.R.C.P. 67 ("If any part of the relief sought is a money judgment or the disposition of a sum of money . . ., a party -- on notice to every other party and by leave of court -- may deposit with the court all or part of the money . . ., whether or not that party claims any of it."). It disputed, however, JJLM's claim for double damages under § 30-5-405(b). The district court granted EOG's Rule 67 motion, and EOG deposited the funds with the court.

[¶7]    JJLM filed a motion for summary judgment on its breach of contract claim and claim for double damages. JJLM argued that, because EOG admitted to owing $377,978.91 for breaching the parties' surface use and damage agreements and failed to cure the default after notification, it was entitled to an additional $377,978.91 in damages under § 30-5-405(b).

[¶8]    In response, EOG claimed that during Summer 2020, it had completed an audit of the payments made to JJLM between 2016 and 2020 and determined it had sometimes underpaid, had on a few occasions overpaid, and missed three payments entirely. It blamed the payment errors on the transition from Yates' accounting system to its own, a land swap by JJLM, and the new payment obligations created by the 2019 SUA. After netting out the

2

overpayments, EOG admitted it owed $377,978.91. It argued, however, that JJLM was not entitled to double that amount under § 30-5-405(b) because the statute applies only when an operator does not pay any portion of an installment owed under a surface use and damage agreement, not when an operator does not pay enough. Because it had only missed three payments totaling $50,528.50, EOG maintained JJLM was only entitled to receive that amount under § 30-5-405(b). Even assuming § 30-5-405(b) applied to underpayments, EOG argued JJLM's claim for double damages was barred by the one-year statute of limitations contained in Wyo. Stat. Ann. § 1-3-105(a)(v)(D) (LexisNexis 2021) and/or laches.

[¶9] The district court granted summary judgment to JJLM on its breach of contract claim and its entire claim for double damages under § 30-5-405(b). It determined it was undisputed that the 2011 SDA and 2019 SUA were enforceable contracts, EOG did not make the required payments under those agreements, and JJLM suffered damages in the amount of $377,978.91 due to EOG's breach. The court also decided JJLM was entitled to double damages on the entire delinquency because § 30-5-405(b) applies not only when an operator does not pay an installment owed under a surface use and damage agreement but also when an operator underpays an installment. It rejected EOG's statute of limitations and laches defenses and awarded JJLM $755,957.82 in total damages.

[¶10] EOG subsequently filed a motion to alter or amend the judgment under Rule 59(e) seeking to reduce the damages awarded to JJML by $59,370.00. It claimed that although it agreed it owed $377,978.91, that amount included ten payments, totaling $59,370.00, which were not yet due when JJLM sent EOG the notice of default. According to EOG, the district court erred in awarding double damages for those payments because JJLM had no basis to demand payment for amounts not yet due. The next day, EOG supplemented its Rule 59(e) motion, claiming it found additional payments that were not due until after JJLM sent the notice of default, and therefore damages should be reduced by $180,878.19. The district court summarily denied EOG's Rule 59(e) motion.

[¶11] While its Rule 59(e) motion was pending, EOG filed a notice of appeal from the district court's summary judgment decision. After the district court denied its Rule 59(e) motion, EOG did not amend its notice of appeal to include the court's denial of its Rule 59(e) motion.

## STANDARD OF REVIEW

[¶12] "We review a district court's summary judgment ruling de novo." *Statzer v. Statzer*, 2022 WY 117, ¶ 10, 517 P.3d 574, 578 (Wyo. 2022) (citing *Spence v. Sloan*, 2022 WY 96, ¶ 22, 515 P.3d 572, 579 (Wyo. 2022), and *Miller v. Sweetwater Cnty. Sch. Dist. #1*, 2021 WY 134, ¶ 13, 500 P.3d 242, 246 (Wyo. 2021)). We also review de novo the district court's interpretation of § 30-5-405(b) and its determination that JJLM's claim for double damages under § 30-5-405(b) was not barred by the statute of limitations. *Guy v. Lampert*,

2016 WY 77, ¶ 13, 376 P.3d 499, 502-03 (Wyo. 2016) (statutory interpretation) (citation omitted); *Inman v. Boykin*, 2014 WY 94, ¶ 21, 330 P.3d 275, 281 (Wyo. 2014) (statute of limitations) (citations omitted). We review for an abuse of discretion the district court's laches decision. *Seherr-Thoss v. Teton Cnty. Bd. of Cnty. Comm'rs*, 2014 WY 82, ¶ 60, 329 P.3d 936, 955 (Wyo. 2014) (laches) (citation omitted). "'A court abuses its discretion when it acts in a manner which exceeds the bounds of reason under the circumstances. The party who is attacking the trial court's ruling has the burden to establish an abuse of discretion, and the ultimate issue is whether the court could reasonably conclude as it did.'" *Meiners v. Meiners*, 2019 WY 39, ¶ 9, 438 P.3d 1260, 1266 (Wyo. 2019) (quoting *McBride-Kramer v. Kramer*, 2019 WY 10, ¶ 11, 433 P.3d 529, 532 (Wyo. 2019), and *Three Way, Inc. v. Burton Enters., Inc.*, 2008 WY 18, ¶ 16, 177 P.3d 219, 225 (Wyo. 2008)). "Whether this Court has jurisdiction is a question of law that we review de novo." *Martin v. Hart*, 2018 WY 123, ¶ 17, 429 P.3d 56, 62 (Wyo. 2018) (citing *Inman v. Williams*, 2008 WY 81, ¶ 10, 187 P.3d 868, 874 (Wyo. 2008)).

## DISCUSSION

### A. Summary Judgment

[¶13] EOG does not dispute that JJLM was entitled to summary judgment on its breach of contract claim. It maintains, however, the court erred by granting summary judgment to JJLM on its claim for double damages under § 30-5-405(b). Specifically, EOG argues the court erred by determining § 30-5-405(b) applied to underpayments of installments owed under a surface use and damage agreement and by deciding JJLM's claim for double damages was not barred by the statute of limitations or laches.

#### 1. Section 30-5-405(b)

[¶14] The double damages provision of the Split Estate Act provides:

> (b) An oil and gas operator who *fails to timely pay* an installment under any annual damage agreement negotiated with a surface owner is liable for payment to the surface owner of twice the amount of the unpaid installment if the installment payment is not paid within sixty (60) days of receipt of notice of failure to pay from the surface owner.

Section 30-5-405(b) (emphasis added).

[¶15] The district court determined the plain meaning of the statutory word "fails" is "to leave undone," "to be deficient in," or "to be unsuccessful." The court decided: "Whichever variation on the definition one chooses, each leads to the same conclusion[.] If an oil and gas operator like EOG does not pay an installment, whether it fails to do so in

4

whole or in part, as [it is] required to do . . . under an SUA, and does not cure that deficiency within sixty days of being notified, . . . § 30-5-405(b) mandates payment to the surface owner of twice the unpaid amount."

[¶16] "When interpreting statutes, this Court searches for the legislature's intent as reflected in the language of the statute." *Wyodak Res. Dev. Corp. v. Wyo. Dep't of Revenue*, 2017 WY 6, ¶ 25, 387 P.3d 725, 732 (Wyo. 2017) (citing *Vance v. City of Laramie*, 2016 WY 106, ¶ 12, 382 P.3d 1104, 1106 (Wyo. 2016)). "'If the statutory language is sufficiently clear and unambiguous, the Court simply applies the words according to their ordinary and obvious meaning.'" *Id*., ¶ 26, 150 P.3d at 732 (quoting *DB v. State (In re CRA)*, 2016 WY 24, ¶ 16, 368 P.3d 294, 298 (Wyo. 2016)). "We give effect to each word, clause and sentence chosen by the legislature, and construe them *in pari materia*." *Id.* (citing *Pedro/Aspen, Ltd. v. Bd. of Cnty. Comm'rs of Natrona Cnty.*, 2004 WY 84, ¶ 27, 94 P.3d 412, 420 (Wyo. 2004)).

[¶17] Section 30-5-405(b) is not ambiguous and neither party argues otherwise. It renders an "oil and gas operator who *fails to timely pay* an installment under any annual damage agreement" liable for "twice the amount of the unpaid installment if the installment payment is not paid within sixty (60) days of receipt of notice of failure to pay from the surface owner." (Emphasis added). EOG does not dispute it is an "oil and gas operator," *see* Wyo. Stat. Ann. § 30-5-401(a)(v) (LexisNexis 2021) ("'[o]il and gas operator' means a person engaged in oil and gas operations, his designated agents, contractors and representatives[]"), or that the payments at issue in this case were installments it owed JJLM under the parties' surface use and damage agreements. Nor does it dispute that the definitions of "fail" cited by the district court are the plain and ordinary meaning of the word. However, it contends we should use the "to leave undone" definition of "fail" because utilizing the other definitions impermissibly reads words into the statute or results in the statute being ambiguous and unconstitutionally vague. Applying the "to leave undone" definition, EOG maintains the double damages provision applies only when an oil and gas operator leaves a payment entirely undone, i.e., does not make a payment at all. It claims that from 2016 to 2020, it made all but three payments. Although some of those payments were not the correct amount, EOG asserts it nevertheless made the payments and therefore did not leave them "undone."

[¶18] The plain and ordinary meaning of the word "fail" is "to leave undone: NEGLECT," "to be deficient in: LACK," or "to be unsuccessful." *See* https://www.merriam-webster.com/dictionary/fail (last visited Dec. 9, 2022). "Undone" means "not done: not performed or finished." *See* https://www.merriam-webster.com/dictionary/undone (last visited Dec. 9, 2022). "Deficient" means "lacking in some necessary quality or element" and "lack" means "to be deficient or missing" and "to be short or have need of something." *See* https://www.merriam-webster.com/dictionary/deficient; https://www.merriam-webster.com/dictionary/lack (last visited Dec. 9, 2022). The plain meaning of "unsuccessful" is "not successful: not meeting

5

with or producing success." *See* https://www.merriam-webster.com/dictionary/unsuccessful (last visited Dec. 9, 2022). "Success" in turn means "favorable or desired outcome." *See* https://www.merriam-webster.com/dictionary/success (last visited Dec. 9, 2022). Under any of these definitions, even the "to leave undone" definition advocated by EOG, when an oil and gas operator underpays an installment owed to a surface owner under a surface use and damage agreement, it "fails to . . . pay" the installment. In such circumstances, the installment is "not done," "not performed or finished," is "lacking" or "short," and does not meet "the desired outcome," i.e., full payment of the installment.

[¶19] EOG makes five primary arguments attempting to avoid the plain meaning of the statute. We reject each of these arguments. First, EOG argues if we use the "to be unsuccessful" definition of "fail," we either have to modify the definition of fail to be "unsuccessful in whole or in part" or we have to impermissibly add "in whole or in part" into the statute. *See Wyodak Res. Dev. Corp.*, ¶ 26, 387 P.3d at 732 ("A statute is not [to be] interpreted in a way that renders a portion of it meaningless or adds language to it.") (citation omitted). According to EOG, because the legislature did not include those words in the statute, but could have easily done so, such omission must have been intentional. As we just explained, the plain and ordinary meaning of "fail" to pay under the "to be unsuccessful" definition includes underpayments. "The legislature thus incorporated [underpayments] in the statutory language it used. No additional language is needed to support this plain and ordinary interpretation." *WPX Energy Rocky Mountain, LLC v. Wyo. Dep't of Revenue*, 2022 WY 104, ¶ 27, 516 P.3d 449, 456 (Wyo. 2022).

[¶20] Next, EOG maintains if we use the "to be deficient in" definition of "fail," § 30-5-405(b) is ambiguous as to what quality of the payment must be deficient. While EOG concedes it is plausible to read the statute as applying to payments that are deficient in amount, it argues there are other possible readings of the statute. For example, it claims the "fails to pay" language of the statute could be read to mean the tendered payment was deficient because it did not include the information necessary to adequately account for the payment. The statutory phrase is "fails to pay," not "fails to provide sufficient information for accounting purposes." The only plausible reading of the statute is that the deficiency must be in the amount of the payment, which includes paying nothing and not paying enough.

[¶21] Third, EOG argues if we interpret "fail" to pay to require the payment to be deficient in amount, the statute is unconstitutionally vague because it does not clarify what amount or percentage of underpayment triggers an operator's liability for double damages under § 30-5-405(b).

> A statute is impermissibly vague if people of common intelligence must necessarily guess at its meaning and would differ as to its application. *Newport Int'l. Univ., Inc.*, [*v. State*

6

> *Dep't of Ed.*, 2008 WY 72,] ¶ 23, 186 P.3d [382,] 388 [(Wyo.
> 2008)]. To succeed on a claim of vagueness, "the complainant
> must demonstrate that the law is impermissibly vague in all of
> its applications." *Vill. of Hoffman Estates v. Flipside, Hoffman
> Estates, Inc.*, 455 U.S. 489, 497, 102 S.Ct. 1186, 1193, 71
> L.Ed.2d 362 (1982). "If legislative intent can be ascertained
> with reasonable certainty, the statute will not be declared
> inoperative." *Haddenham v. City of Laramie*, 648 P.2d 551,
> 555 (Wyo. 1982). "[L]ack of precision is not itself offensive
> to the requirements of due process." *Browning v. State*, 2001
> WY 93, ¶ 12, 32 P.3d 1061, 1066 (Wyo. 2001).

*Travelocity.com LP v. Wyo. Dep't of Revenue*, 2014 WY 43, ¶ 98, 329 P.3d 131, 152 (Wyo. 2014). As we explained above, the plain language of § 30-5-405(b) unambiguously demonstrates the legislature intended it to apply to underpayments. Any underpayment, even an underpayment of $1.00, triggers the statute. Because the statute clearly delineates when an operator will be liable for double damages, it is not unconstitutionally vague.[1]

[¶22] Fourth, EOG claims that to interpret § 30-5-405(b) to include underpayments results in the word "fail" meaning different things throughout the Split Estate Act. It points to Wyo. Stat. Ann. § 30-5-404(e) and (f) (LexisNexis 2021), which refer to a surface owner who "has failed to bring an action for damages within the required time period" and who "has failed to give written notice," respectively. According to EOG, "failed" in these subsections can refer only to not bringing an action and not giving notice because it is impossible to partially do either of these things. Unlike in these subsections, the word "fails" in § 30-5-405(b) is immediately followed by the infinitive phrase "to timely pay." And, unlike the infinitive phrases used in these subsections, a person can "fail to pay" in whole or in part.[2]

---

[1] In a footnote in its brief, EOG argues: "If an operator can run afoul of the [Split Estate] Act by underpaying by $1.00, then the statute has an inherent[ly] absurd result because that result can serve no practical purpose for operator or surface owner. *Bridle Bit Ranch Co.* [*v. Basin Elec. Power Co-Op*], [2005 WY 108,] ¶ 21, 118 P.3d [996,] 1008 [(Wyo. 2005)] (stating courts should not interpret statutes to create absurd results)." We fail to see any absurdity because it is unlikely a surface owner would sue an operator for a single underpayment of $1.00, for a mere recovery of $2.00. EOG's argument also ignores that a surface owner cannot seek double damages for an underpayment of a $1.00 without first providing notice of the default to the operator and the operator failing to cure the default.

[2] EOG also relies on other statutes outside the Split Estate Act, but they are not helpful for two reasons. First, "[w]e construe a statutory provision to harmonize it with other provisions *relating to the same subject matter*." *Wyo. Dep't of Corr. v. Watts*, 2008 WY 19, ¶ 23, 177 P.3d 793, 799 (Wyo. 2008) (emphasis added). *See also, Bridle Bit Ranch Co.*, ¶ 21, 118 P.3d at 1008 ("'In interpreting statutes, . . . [a]ll statutes must be construed in *pari materia* and, in ascertaining the meaning of a given law, *all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony*.'" (emphasis added) (quoting *In Re Loberg*, 2004 WY 48, ¶ 5, 88 P.3d 1045, 1048 (Wyo. 2004), and *Bd. of Cnty. Comm'rs of Teton Cnty. v. Crow*, 2003 WY 40, ¶¶ 40–41, 65 P.3d 720, 733–34 (Wyo. 2003)). Second, like the statutory subsections from the Split Estate Act relied upon by EOG, none of these other

[¶23]   Finally, EOG argues interpreting § 30-5-405(b) as applying to underpayments strays from the obvious intent of the legislature to shift from the common law accommodation doctrine, which allowed a mineral developer to use a surface owner's land to develop the minerals without having to compensate the surface owner for any damage, to ensuring surface owners are compensated, whether through a surface use agreement or the operator posting a bond.  According to EOG, § 30-5-405(b) acts as the enforcement mechanism should an operator attempt to rely on the accommodation doctrine for nonpayment.  It maintains the legislature did not intend it to apply to situations, like here, where an operator is not attempting to avoid payment but rather, due to accounting errors resulting from a change in ownership and the complexity of the parties' surface use agreements, there is a good faith dispute between the parties as to the amount owed.  Indeed, EOG argues that if we interpret § 30-5-405(b) to apply to situations where there is a good faith payment dispute between the parties, an absurd result ensues as an operator would have to pay the amount demanded by the surface owner to avoid double damages, thereby allowing surface owners to use § 30-5-405(b) as a weapon to force operators to comply with their demands.  EOG claims this cannot be what the legislature intended.

[¶24]   Nothing in the language of § 30-5-405(b) indicates the legislature intended it to apply only when an operator is seeking to avoid payment altogether or otherwise indicates the legislature intended to exempt an operator from double damages if its failure to pay the full amount due results from a good faith dispute between the parties about the amount owed.  Rather, § 30-5-405 is analogous to the penalties imposed by the Wyoming Royalty Payment Act on oil and gas lessees and operators who violate its provisions, *see* Wyo. Stat. Ann. § 30-5-303 (LexisNexis 2021).  *In Cabot Oil & Gas Corp. v. Followill,* 2004 WY 80, ¶ 11, 93 P.3d 238, 242 (Wyo. 2004), we explained:

> "The [Wyoming Royalty Payment] Act is a remedial statute and, as such, is to be liberally construed to achieve its remedial purpose. *Moncrief v. Harvey*, 816 P.2d 97, 105 (Wyo. 1991). The Act was enacted in 1982 to stop oil producers from retaining other people's money for their own use. *Independent Producers Marketing Corp. v. Cobb,* 721 P.2d 1106, 1110 (Wyo. 1986)."

Given the remedial nature of § 30-5-405(b), the legislature obviously intended it to ensure surface owners are timely paid the full and correct amount to which they are entitled under a surface use agreement.  If an operator disputes the amount owed, it can avoid double damages by paying under protest and suing the surface owner to recover any overpayment.

statutes speak to a failure "to pay."  *See, e.g.,* Wyo. Stat. Ann. §§ 1-11-125 (LexisNexis 2021) ("fail to attend"); 1-21-1005 (LexisNexis 2021) ("fails to appear"); 22-18-111(a)(vi) ("fail to fill any vacancy"), (b) ("fail to appoint"), 30-5-109(c)(ii) (LexisNexis 2021) ("failing to so consent"), (j)(iii) ("fails to respond"); 39-15-108(c)(xii) (LexisNexis 2021) ("fails to file a [tax] return").

[¶25] The district court correctly decided § 30-5-405(b) applies to oil and gas operators, like EOG, which underpay installments owed under surface use and damage agreements.

## 2. Statute of Limitations

[¶26] In the district court, EOG argued JJLM's claim for double damages was barred by the statute of limitations contained in § 1-3-105(a)(v)(D), which requires actions "[u]pon a statute for a penalty or forfeiture" to be brought within one year. The district court rejected EOG's argument, concluding a cause of action for double damages under § 30-5-405(b) does not accrue until the surface owner provides written notice of the failure to pay to the oil and gas operator and the operator fails to cure the default within 60 days. It found EOG received written notice of default from JJLM on September 14, 2020, and JJLM's cause of action accrued sixty days later, on November 14, 2020, when EOG failed to cure the default. As a result, the court determined JJLM's December 8, 2020, lawsuit was filed well within the one-year statute of limitations.

[¶27] EOG claims the district court erred by determining JJLM's claim for double damages for underpayments made from 2016 to November 2019 were not barred by the one-year statute of limitations contained in § 1-3-105(a)(v)(D). Although it acknowledges we have never applied this limitations period to a claim for double damages under § 30-5-405(b), it nevertheless maintains we are likely to apply the discovery rule and hold the one-year limitations period begins to run when a surface owner knows or has reason to know of the existence of a cause of action. Applying the discovery rule, EOG argues JJLM had reason to know of the payment issues as soon as it received each payment because (1) EOG included the lease number with each payment, (2) EOG met with JJLM to explain the nature of each payment, and (3) JJLM had copies of the 2011 SDA and 2019 SUA. According to EOG, because JJLM had all the information necessary to know how payments should be calculated at the time the payments were being made, it should have known at that time they were incorrect. Nevertheless, JJLM waited until December 2020 to file suit.

[¶28] We have yet to decide whether § 1-3-105(a)(v)(D) applies to causes of action under § 30-5-405(b) but, even assuming it does, JJLM's suit was timely. Section 1-3-105(a)(v)(D) provides:

> (a) Civil actions other than for the recovery of real property can only be brought within the following periods *after the cause of action accrues*:
> . . .
>> (v) Within one (1) year, an action . . .:
> . . .

9

> (D) Upon a statute for a penalty or forfeiture, except that if a different limitation is prescribed in the statute by which the remedy is given the action shall be brought within the period prescribed by the statute.

"A cause of action accrues for statute of limitation purposes when all elements of the cause of action are present, including damages." *Lucky Gate Ranch, L.L.C. v. Baker & Assocs., Inc.*, 2009 WY 69, ¶ 20, 208 P.3d 57, 65 (Wyo. 2009) (citing *McCreary v. Weast*, 971 P.2d 974, 979 (Wyo. 1999)). *See also, Gillis v. F & A Enterprises*, 934 P.2d 1253, 1255 (Wyo. 1997) ("Generally, a cause of action accrues as soon as a right to maintain an action arises—when the plaintiff could have first filed and prosecuted the action to successful completion." (citing *DeWitt v. Balben*, 718 P.2d 854, 858 (Wyo. 1986)) (other citations omitted).

[¶29]   Under the plain language of § 30-5-405(b), cited above, a cause of action for double damages does not accrue until (1) the operator fails to timely pay or underpays an installment, (2) the surface owner provides notice of the default, and (3) the operator fails to cure the default within 60 days of receiving the notice.  In this case, EOG admitted that between 2016 and 2020, it underpaid and did not pay several installments owed to JJLM under the parties' surface use and damage agreements.  JJLM sent notice of default to EOG, and EOG received that notice on September 14, 2020.  EOG had 60 days, or until November 14, 2020, to cure the default.  When EOG did not cure the default by that date, a cause of action under § 30-5-405(b) accrued.  EOG filed suit less than a month later and well within the one-year limitations period.

[¶30]   EOG resists this result.  It claims the cause of action created by § 30-5-405(b) is for an operator's failure to timely pay, which accrues when the failure to timely pay occurs.  While a surface owner must first send notice of default prior to seeking double damages, EOG argues sending notice does not change that a cause of action exists.  Accordingly, EOG argues the notice requirement is nothing more than a condition precedent to filing suit, not related to a statute of limitations.  EOG is mistaken.  The cause of action for an operator's failure to timely pay an installment under a surface use and damage agreement is breach of contract, which is subject to a ten-year statute of limitations.  Section 1-3-105(a)(i).  JJLM brought its breach of contract claim well within the ten-year statute of limitations.

[¶31]   EOG argues that by holding the statute of limitations for a claim for double damages does not begin to run until the surface owner provides notice and the operator fails to cure, we are essentially finding the notice requirement of § 30-5-405(b) tolls the statute of limitations.  It claims this interpretation creates an absurd result because a surface owner, even after discovering a failure to pay, could indefinitely toll the statute of limitations by not sending the notice.  The notice requirement does not toll the statute of limitations.  Rather, the statute of limitations for double damages under § 30-5-405(b) does not begin

to run until the surface owner provides notice and the operator fails to cure. As a result, a surface owner cannot indefinitely toll the statute of limitations by not sending notice. And, because the statute of limitations does not begin to run until the operator fails to cure, it is the operator, not the surface owner, which controls whether a cause of action for double damages ever comes into existence.

[¶32] The district court correctly decided EOG's claim for double damages under § 30-5-405(b) was not barred by the one-year statute of limitations contained in § 1-3-105(a)(v)(D).

### 3. Laches

[¶33] We have described laches as follows:

> "Laches bars a claim when a party has delayed in enforcing its rights to the disadvantage of another." *Windsor Energy Grp., L.L.C. v. Noble Energy, Inc.*, 2014 WY 96, ¶ 12, 330 P.3d 285, 288 (Wyo. 2014) (citing *Dorsett v. Moore*, 2003 WY 7, ¶ 9, 61 P.3d 1221, 1224 (Wyo. 2003)). "The defense of laches is based in equity and whether it applies in a given case depends upon the circumstances." *Id.*, ¶ 12, 330 P.3d at 288–89 (quoting *Ultra Resources, Inc. v. Hartman*, 2010 WY 36, ¶ 123, 226 P.3d 889, 929 (Wyo. 2010)). "Two elements must be proven to establish laches: 1) inexcusable delay; and 2) injury, prejudice, or disadvantage to the defendants or others." *Id.*, ¶ 12, 330 P.3d at 289 (citing *Moncrief*, 775 P.2d at 1025). "The existence of laches is primarily determined not by lapse of time but by considerations of justice." *Merrill v. Rocky Mountain Cattle Co.*, 26 Wyo. 219, 181 P. 964, 974 (1919) (citation omitted).

*Tram Tower Townhouse Ass'n v. Weiner*, 2022 WY 58, ¶ 44, 509 P.3d 357, 367 (Wyo. 2022).

[¶34] The district court determined EOG could not show JJLM inexcusably delayed in bringing its suit because neither party discovered EOG's payment issues until around the time of the 2019 SUA. Although the parties attempted to resolve the issues, those efforts proved unsuccessful in Summer 2020 and JJLM filed suit a few months later, in December 2020. The court also found EOG had not shown it was prejudiced by any delay because EOG was aware from its own audit in Summer 2020 that it had underpaid JJLM in the amount of $377,978.91, was notified of the default in September 2020, and was given an opportunity to cure. Nevertheless, EOG failed to cure the default. Thus, the court found any prejudice suffered by EOG was of its own making.

11

[¶35] EOG argues the district court erred by concluding JJLM's claim was not barred by laches. It claims there was inexcusable delay because JJLM sat on its rights by waiting between two and four years to bring its claims relating to the 2016-2018 payments even though it had the information to allege these claims as soon as the payments were received. EOG also asserts it was prejudiced by the delay because it enabled JJLM to make a more expansive claim for double damages. According to EOG, had JJLM acted earlier, EOG would have had notice of the errors in its accounting system and acted sooner to ensure proper payment as its "goal has always been to pay correctly, hence why it escrowed the undisputed amount with the [c]ourt."

[¶36] The district court did not abuse its discretion by determining laches did not bar JJLM's claim for double damages. EOG failed to show JJLM inexcusably delayed in bringing suit after discovering EOG's non-compliance with the 2019 SUA. While EOG faults JJLM for not discovering the default sooner, the record shows EOG's oil and gas operations on JJLM's land are extensive and include the drilling and operation of over 20 oil and gas wells and the construction and maintenance of miles of access roads, pipelines, power lines, and other infrastructure. Yet, when it submitted a payment, EOG did not include any information regarding the payment other than a lease number, making it difficult for JJLM to determine for what surface disturbance the payment was being made. EOG, itself, apparently did not discover its errors until JJLM brought them to its attention, even though EOG was responsible for the accounting system change and had knowledge of the 2011 SDA and signed the 2019 SUA. Moreover, the majority of EOG's default arose after execution of the 2019 SUA. JJLM brought these issues to EOG's attention no later than Summer 2020, less than a year after they arose, and brought suit in December 2020.

[¶37] EOG also failed to show it was prejudiced by any delay in JJLM bringing suit. Again, EOG faults JJLM for exposing it to double damages. Yet, EOG acknowledged that, in Summer 2020, it completed an audit of the payments it made to JJLM between 2016 and 2020, discovered it owed JJLM $377,978.91, and "had several checks cut to begin paying that amount to JJLM" prior to JJLM filing suit. EOG, however, did not cure the default then, or after being provided notice and an opportunity to cure. As the district court aptly stated, any prejudice was of JJLM's "own making." *Ultra Res., Inc. v. Hartman*, 2010 WY 36, ¶ 128, 226 P.3d 889, 930 (Wyo. 2010) (concluding the district court correctly determined the defendants had failed to establish their laches defense because, *inter alia*, any prejudice they suffered "was of their own making").

[¶38] The district court did not abuse its discretion by determining JJLM's claim for double damages was not barred by laches.

### B. W.R.C.P. 59(e) motion

[¶39] EOG argues the district court abused its discretion by denying its Rule 59(e) motion. JJLM argues we lack jurisdiction to review the court's denial of EOG's Rule 59(e) motion because EOG failed to file an amended notice of appeal with respect to that denial. We agree with JJLM.

[¶40] On March 2, 2022, while EOG's Rule 59(e) motion was still pending, EOG filed its notice of appeal with respect to the district court's summary judgment order. Under Wyoming Rule of Appellate Procedure (W.R.A.P.) 2.02(c), this notice of appeal became effective upon the district court's summary denial of EOG's Rule 59(e) motion. Rule 2.02(c) ("If a party files a notice of appeal after the court announces or enters a judgment, but before it disposes of [certain motions, including a W.R.C.P. 59(e) motion to alter or amend], the notice becomes effective to appeal a judgment or order, in whole or in part, upon entry of a final order disposing of the last such remaining motion."). However, if EOG intended to also appeal from the court's denial of its Rule 59(e) motion, it was required to file an amended notice of appeal identifying that denial as an order being appealed. Rule 2.02(c) ("If the appealing party also intends to challenge the order disposing of the last remaining motion or the deemed denial of [] such motion, *that party must file an amended notice of appeal* within the time prescribed by Rule 2.01.") (emphasis added). It did not.

[¶41] Moreover, W.R.A.P. 2.07 requires a notice of appeal to "identify the judgment or appealable order" being appealed. *See also, Painovich v. Painovich*, 2009 WY 116, ¶ 11, 216 P.3d 501, 504 (Wyo. 2009) ("W.R.A.P. 2.07 sets forth the substance of what must be contained within the notice of appeal, including identifying the judgment or appealable order that is being appealed and attaching, as an appendix, the order or judgment that is being appealed."). A notice of appeal "only perfects an appeal of the order(s) identified in the notice." *Evans v. Moyer*, 2012 WY 111, ¶ 18, 282 P.3d 1203, 1209 (Wyo. 2012) (citing *Nish v. Schaefer*, 2006 WY 85, ¶ 23, 138 P.3d 1134, 1143 (Wyo. 2006)). Because EOG did not identify the court's denial of its Rule 59(e) motion in its notice of appeal, we lack jurisdiction to review that denial. *Id.*, ¶ 19, 282 P.3d at 1209 ("To the extent Ms. Evans' appeal challenges the district court's rulings in the October 2011 order or the sufficiency of the accountings, those claims and arguments are not properly before us because Ms. Evans did not identify that order in her notice of appeal." (citing *Painovich*, ¶ 11, 216 P.3d at 504)). *See also, Woodward v. Valvoda*, 2021 WY 5, ¶ 35, 478 P.3d 1189, 1202 (Wyo. 2021) ("Ms. Woodward's notice of appeal did not identify an order denying her Rule 60(b) motion, which it must for this Court to have jurisdiction over it. W.R.A.P. 2.07(a)(2); 6.01(b)."); *State of Wyo., ex rel., Wyo. Dep't of Workforce Servs., Workers Compensation Div. v. Beazer*, 2016 WY 111, ¶ 26, 384 P.3d 267, 276 (Wyo. 2016) (concluding we lacked jurisdiction over the district court's order awarding costs and attorney fees because the Wyoming Workers' Safety and Compensation Division did not file a notice of appeal from that order).

13

[¶42] EOG claims, however, that a different result ensues because the district court granted its motion to consider its notice of appeal as "premature" under W.R.A.P. 2.04.[3] According to EOG, our rules of appellate procedure do not answer whether a premature notice of appeal also requires an amended notice of appeal when a party files the original notice "nearly simultaneous" with its Rule 59(e) motion. As a result, it claims the "logical reading of the procedure below is that EOG's premature notice of appeal also served the same function as an amended notice because it covered the appropriate timeframe and orders. Therefore, this Court should retain appellate jurisdiction over the district court's decision on EOG's [R]ule 59 motion."

[¶43] It is unclear why the district court granted EOG's motion to consider its notice of appeal as premature under Rule 2.04 when the court it had entered, not merely announced, its summary judgment order. Rule 2.04 ("A notice of appeal filed after the court announces a decision or order -- but before entry of the judgment or order -- is treated as filed on the date of and after the entry. A premature notice of appeal shall comply with Rule 2.07, to the extent possible."). In any event, Rule 2.02(c) clearly required EOG to file an amended notice of appeal if it wished to challenge on appeal the court's denial of its Rule 59(e) motion. It does not matter that EOG's motion was filed "nearly simultaneous" with its notice of appeal. Without a notice of appeal identifying the district court's denial of EOG's Rule 59(e) motion, we are without jurisdiction to review that denial.

### C. Attorney Fees

[¶44] In the district court, JJLM argued it was entitled to its attorney fees and costs under the 2019 SUA, which stated: "If Operator defaults under this agreement, Operator shall pay all costs and expenses, including a reasonable attorney's fee, incurred by Owner in successfully enforcing this agreement." EOG agreed JJLM was entitled to the fees and costs incurred in bringing its breach of contract claim, but claimed JJLM was not entitled to the fees and costs incurred in prosecuting its double damages claim because such claim does not constitute "enforcing" the 2019 SUA. The district court concluded JJLM's claims could not be separated and awarded JJLM its requested fees. EOG did not appeal from the court's award of fees. JJLM now seeks the attorney fees and costs it incurred in defending this appeal. Because EOG has not appealed from the district court's determination that JJLM is entitled to its attorney fees and costs under the 2019 SUA and because EOG does not contest JJLM's request for its appellate fees and costs in its reply brief, JJLM is also entitled to its attorney fees and costs on appeal. *Cf. Levy v. Aspen S, LLC*, 2021 WY 46, ¶ 32, 483 P.3d 852, 860 (Wyo. 2021) ("Because Mr. Levy is entitled to his attorney fees and costs under the easement's fee-shifting provision, he is also entitled to the attorney fees and costs he incurred in this appeal."); *Kinstler v. RTB South Greeley, Ltd., LLC*, 2007 WY

---

[3] EOG claims the parties and the district court exchanged emails concerning "how to handle . . . procedurally" the fact that both its notice of appeal and its Rule 59(e) motion left its counsel's office "on the same date, one fax filed and one via mail." It alleges the parties and the court agreed to treat EOG's notice of appeal as premature under W.R.A.P. 2.04. The emails are not in the record.

14

98, ¶ 13, 160 P.3d 1125, 1129 (Wyo. 2007) ("Where a contract allows the award of attorney's fees, that includes fees incurred on appeal."); *DeWitt*, 718 P.2d at 864 ("[I]f attorney's fees are expressly authorized by contract or statute, such provision also applies to fees incurred at  the appellate level.").

## CONCLUSION

[¶45]  The district court correctly determined § 30-5-405(b) applies when an oil and gas operator underpays an installment owed to a surface owner under a surface use and damage agreement.  The court also properly concluded JJLM's claim for double damages was not barred by either the statute of limitations or laches.  We therefore affirm the district court's grant of summary judgment to JJLM on its claim for double damages under § 30-5-405(b). We lack jurisdiction to review the court's denial of EOG's Rule 59(e) motion because EOG failed to effect an appeal from that denial.  JJLM is entitled to its attorney fees and costs on appeal.  We will decide the appropriate amount of appellate fees and costs after JJLM submits the proper documentation.  *See Levy*, ¶ 32, 483 P.3d at 860 (citing *Cline v. Rocky Mountain, Inc.*, 998 P.2d 946, 953 (Wyo. 2000) ("Generally, the appellate court, rather than the trial court, determines the proper amount of fees to be awarded for the legal work on appeal.")).